**COLUMBIA GAS TRANSMISSION CORP., Plaintiff,**

v.

**AN EXCLUSIVE GAS STORAGE EASEMENT, et al., Defendant.**

No. C82–3619A.

United States District Court, N.D. Ohio, E.D.

Dec. 28, 1983.

As Amended Jan. 16, 1984.

David D. Noble, Millersburg, Ohio, for plaintiff.

James DeWeese, Mansfield, Ohio, Robert P. DeSanto, Ashland, Ohio, for defendant.

## MEMORANDUM OPINION

DOWD, District Judge.

Plaintiff, Columbia Gas Transmission Corp. (Columbia), filed the above-captioned case seeking to obtain by way of condemnation an exclusive gas storage easement on a tract of land located in Ashland County, Ohio. The defendants filed an answer denying Columbia's right to proceed by way of condemnation and also counterclaimed alleging wrongful use of their property and conversion of their natural gas. The following defendants are alleged to have an interest in that property: Stanley Morris Parrott, individually and as executor of the will of Ross L. Parrott and as Administrator of the estate of Hazel B. Parrott, William Andrew Parrott, Dorothy Parrott, Lela Iona Hipp, Clyde Hipp, and

Beulah Parrott. Jurisdiction is invoked pursuant to the Natural Gas Act, 15 U.S.C. § 717f(h).[1] The case was bifurcated and the issue of Columbia's right to condemnation was tried to the Court on October 21, 1983. For the reasons which follow, judgment is entered in favor of the defendants and against Columbia.

## FINDINGS OF FACT

1. Columbia is a Delaware Corporation engaged in the production, purchase, storage, and interstate transportation and sale of natural gas in interstate commerce in the states of Kentucky, Maryland, New York, Ohio, Pennsylvania, Virginia, and West Virginia. Columbia's principal place of business is located in Charleston, West Virginia.

2. Columbia operates underground storage fields as an integral part of its natural gas transmission function. Columbia must store excess gas during the summer for use during the winter when cold weather causes market demands to exceed the capacity of production and transmission pipelines. Columbia could not produce adequate supplies of natural gas for its wholesale customers and through them to the gas consuming public without the use of underground storage facilities.

3. Columbia operates a natural gas storage field in Richland and Ashland Counties of Ohio which is known as the Weaver Storage Field. Within the Weaver Storage Field is a gas storage pool which is known as the Weaver 3–F pool.

4. The gas in the Weaver Field is stored in a geological formation known as the Clinton formation, which is a porous and permeable[2] layer of rock approximately 2,900 feet beneath the earth's surface.

5. A certificate of public convenience and necessity was issued on February 6, 1953 to the Ohio Fuel Gas Company, predecessor Company of Columbia, by the Federal Power Commission, predecessor agency of the Federal Energy Regulatory Commission.

6. The certificate of public convenience and necessity was issued based on the information in the application before the Federal Power Commission. The application before the Federal Power Commission included a map outlining an area of land in Ashland and Richland Counties, Ohio.

7. The tract of land owned by the defendants is not within the boundaries of the Weaver Field as set forth on the map included in the application for the certificate of public convenience and necessity which was presented to the Federal Power Commission.

## CONCLUSIONS OF LAW

■ 1. A holder of a certificate of public convenience and necessity may acquire an easement for the underground storage of natural gas by the exercise of the right of eminent domain in the District Court of the United States for the District in which such property is located, pursuant to § 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h).

■ 2. The power of eminent domain given to a holder of a certificate of public convenience and necessity, to obtain an easement for the underground storage of natural gas, extends only to the property located within the geographical area designated on the map or maps attached to the application for the certificate of public convenience and necessity as required by 18 C.F.R. § 157.14(a)(6).

■ 3. As the property of the defendants, i.e. the Parrott property, is not within the designated area of the certificate of public convenience and necessity issued to Columbia, Columbia does not have the right to acquire an easement for the underground storage of natural gas on the Parrott property by the power of eminent domain.

---

1. See *infra* pp. 932–33.

2. Porous refers to the existence of spaces or pores within the rock; permeable refers to the ability of the gas to travel between the spaces or pores in the rock.

ANALYSIS OF APPLICABLE LAW

1. *The Natural Gas Act.*

Columbia asserts that pursuant to § 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h), it may acquire an easement for the storage of gas by the exercise of the right of eminent domain. The Act provides:

When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipeline or pipelines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipeline or lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

The defendants assert that 15 U.S.C. § 717f(h) does not provide the right of eminent domain to natural gas companies seeking to acquire property rights for underground storage facilities. The Court disagrees.

■■■■ The Court recognizes that statutes authorizing the use of eminent domain to take private property for public use are to be construed strictly. *Delaware Lackawanna & Western Railroad Co. v. Town of Morristown,* 276 U.S. 182, 192, 48 S.Ct. 276, 278, 72 L.Ed.2d 523 (1928). While the Act does not expressly authorize the use of eminent domain to acquire easements for underground gas storage facilities, such a use is clearly within the spirit and intent of the Act. The Act does provide that eminent domain power may be used to insure the operation of stations or equipment necessary to the proper operation of natural gas pipelines. Underground gas storage facilities are a necessary and integral part of the operation of piping gas from the area of production to the area of consumption. Given the importance of natural gas underground storage facilities to the overall function of supplying natural gas to the consuming public, the underground facilities fall within the intent of the legislature to provide the use of eminent domain to acquire the right-of-way for stations or equipment necessary to the proper operation of gas pipelines.

Only one other Court has interpreted § 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h). In *Natural Gas Pipeline Co. of America v. Iowa State Commerce Commission,* 369 F.Supp. 156 (S.D.Iowa 1974), the Court was presented with the issue of whether an Iowa statute, which required a permit issued by the state for the operation of gas storage facilities, violated the supremacy clause of the United States Constitution because it was in conflict with the eminent domain power granted in the Natural Gas Act. The state asserted that the Iowa statute was not in conflict with the federal statute because the Natural Gas Act did not grant eminent domain power to natural gas companies seeking to acquire property rights for underground storage facilities. The court held the Act applied to underground storage facilities and reasoned as follows:

Legislative history indicates that the purpose of § 7(h), 15 U.S.C. § 717f(h) was to provide the means by which orders of the FPC could be implemented. "No person or corporation should be allowed to defeat the order or certificate [of public convenience and necessity] of the Commission by refusing to grant a right-of-way for a reasonable compensation for the operation of the pipeline." Hearings on H.R. 2956 before the House Committee on Interstate and Foreign Commerce, 80th Cong. 1st Sess. at 377–379 (1947).

The necessity for eminent domain powers to effectively regulate this form of interstate commerce has been recognized in *Thatcher v. Tennessee Gas Transmission Co.,* (5th Cir., 1950), 180 F.2d 644, 647, and *Tennessee Gas Transmission Co. v. Cleveland Trust Co.,* (Ohio Prob.

1953), 59 Ohio Op. 282, 120 N.E.2d 143, 146. (sic) Unless the power of eminent domain was granted for underground storage facilities, the federal certificate of public convenience and necessity could be nullified contrary to the intent of Congress and the cases.

Underground storage facilities are "necessary for the proper operation" of a gas pipeline. The Natural Gas Pipeline Safety Act of 1968 (49 U.S.C. § 1671) recognizes storage is an element of transportation of gas. *Id.* at 159.

■ The holding of the Court in *Natural Gas Pipeline v. Iowa State Commerce Commission, supra,* is well-reasoned. Underground storage facilities are a necessary and integral part of the operation of a natural gas pipeline. Consequently, a holder of a certificate of public convenience and necessity may invoke the power of eminent domain to obtain an easement to store natural gas in underground storage facilities.

### 2. *The Parrott Property.*

■ Columbia asserts that "[i]n order to uphold the condemnation in this case, the Court need only find (a) that the certificate, as amended, is currently valid and effective, and (b) that the easement sought is necessary to protect the certificated development of the Weaver 3–F pool, whatever that may be in terms of geography." The Court disagrees; a third step is necessary for proper analysis. The property on which the easement is sought must be within the geographic area for which the certificate of public convenience and necessity was issued.

At the trial, a geologist, Mr. Essex, and Columbia's vice-president of storage, Ralph Edwards, testified regarding the use of underground storage facilities. It is clear from their testimony that the storage of natural gas in underground facilities is not an exact science. As gas is pumped into and out of a storage pool, the pressure varies. Columbia estimates the size of a storage pool by measuring the pressure at various observation gas wells. Occasionally the gas in the storage facility travels beyond what is believed to be the pool's boundaries. Columbia asserts that the gas stored in its Weaver 3–F pool has traveled beyond what were thought to be the pool's boundaries and under the Parrott property.[3]

Columbia asserts that their right to obtain easements through eminent domain travels with the underground gas. The argument follows that as long as Columbia holds a certificate of public convenience and necessity for the original storage field, it has the right to obtain easements wherever the gas in the storage field travels. This assertion is contrary to the Natural Gas Act.

Section 717f(c)(1)(A) provides in pertinent part:

No natural-gas company or person which will be a natural-gas company upon completion of any proposed construction or extension shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, or undertake the construction or extension of any facilities therefore, or acquire or operate any such facilities or extensions thereof, unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations .... 15 U.S.C. § 717f(c)(1)(A)

The certificate of public convenience and necessity issued by the Federal Power Commission February 6, 1953 does not cover the Parrott property. The Ohio Fuel Gas Company's application and supplement to the application for the certificate of public convenience and necessity included maps of the area of the Weaver 3–F storage pool.

---

**3.** The defendants dispute Columbia's assertion that the gas from the Weaver 3–F pool has traveled under their property. The defendants assert that the gas under the Parrott property is native gas and not storage gas from the Weaver 3–F pool. A holding on this issue is not necessary and therefore, the Court withholds a finding regarding whether Columbia's gas has traveled under the Parrott property.

(Plaintiff's exhibit 54–55.) Such maps are required to be attached to applications for certificates of public convenience and necessity. 18 C.F.R. § 157.14(a)(6). The Parrott property is approximately two miles from the border of the area designated in the map which was presented to the Federal Power Commission to obtain the certificate. The Commission ordered a certificate to be issued authorizing the underground storage facilities as described in the application and supplement to the application. (Plaintiff's exhibit 56.) Consequently, Columbia does not have a certificate of public necessity and convenience covering the Parrott property and, therefore, is not entitled to acquire rights in that property by the exercise of eminent domain. 28 U.S.C. § 717f(h).

■ The scope of a certificate of public convenience and necessity is construed narrowly. *Cf. Tennessee Gas Transmission Company v. Federal Power Commission*, 340 F.2d 100 (10th Cir.1964), *cert. denied* 381 U.S. 950, 85 S.Ct. 1804, 14 L.Ed.2d 724 (1965) (construction of facilities not within contemplation of "budget-type" certificate is unauthorized). However, Columbia is not without options. It can seek to amend its certificate of public convenience and necessity by application to the Federal Energy Regulatory Commission. "When Congress decided regulation was necessary, it 'entrusted the regulation of the natural gas industry to the informed judgment of the Commission....'" *United Gas Pipe Line Co. v. Federal Energy Regulatory Commission*, 657 F.2d 790, 794 (5th Cir.1981) *citing Permian Basin Area Rate Cases*, 390 U.S. 747, 767, 88 S.Ct. 1344, 1360, 20 L.Ed.2d 312 (1968). Columbia is attempting to circumvent the administrative procedures as provided in the Natural Gas Act, 15 U.S.C. § 717f, 18 C.F.R. § 157.5 *et seq.*, by seeking an easement without a finding by the Federal Energy Regulatory Commission of public convenience and necessity.

Accordingly, Columbia's request for an easement is denied. Judgment is entered in favor of the defendants.