**COLUMBIA GAS TRANSMISSION CORP., Plaintiff-Appellant, Cross-Appellee,**

v.

**An EXCLUSIVE GAS STORAGE EASEMENT, et al., Defendants-Appellees, Cross-Appellants.**

Nos. 84–3094, 84–3120.

United States Court of Appeals, Sixth Circuit.

Argued May 7, 1985.

Decided Oct. 30, 1985.

Kenneth E. Tawney, H.L. Snyder, argued, Charleston, W.Va., David D. Noble, Noble & Hines, Millersburg, Ohio, for plaintiff-appellant, cross-appellee.

James DeWeese, argued, Inscore, Rinehardt & Whitney, Mansfield, Ohio, Robert P. DeSanto, Stanley Morris Parrott, William Andrew Parrott, Lela Iona Hipp, Clyde Hipp, Beulah Parrott, for defendants-appellees, cross-appellants.

Before ENGEL and JONES, Circuit Judges, and EDWARDS, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.

Columbia Gas Transmission Corporation is one of the largest gas pipeline companies in the United States. As part of its gas supply system, it operates a gas storage system in southeastern Ohio. In the instant action, Columbia, without seeking amendment of its certificate of public convenience and necessity, sought to condemn an easement for underground storage of

natural gas under the property owned by defendants Parrotts and their associates. Columbia says that it had previously sought to lease such an easement but had been unable to arrive at a satisfactory bargain. District Judge Dowd heard this case and wrote a careful opinion published at 578 F.Supp. 930 (N.D.Ohio 1983) denying Columbia's right to condemn defendant-appellees' subsurface rights absent amendment of its certificate of convenience and necessity.

Principally involved in this appeal is a certificate of public convenience and necessity obtained by Columbia in Richland and Ashland Counties of Ohio and originally issued February 6, 1953 to Ohio Fuel Gas Company, a predecessor gas company, by the Federal Power Commission, predecessor to the Federal Regulatory Commission. This certificate was based on information in the application which by map outlined an area of land one to two miles from the boundaries of defendants' land. The portion of Columbia's existing storage facility at issue here is called the Weaver 3–F pool.

The Parrotts want to drill to extract what they claim to be native natural gas lying under their land. Columbia claims that the gas underlying the Parrotts' land is stored gas which has seeped there from Columbia's Weaver 3–F pool.[1]

Columbia's appeal as presented to this court contends that by possession of a certificate of public convenience and necessity for development of a gas storage easement on a tract of land one to two miles away, it can legally condemn and then make use of the subterranean structures below the Parrott's land, and beyond any land described by the 1953 certificate, without any further permission by the Federal Energy Regulatory Commission. Columbia recognizes that it must condemn the Parrott's underground rights. It claims, however, that the Weaver 3–F pool actually extends under the Parrotts' land, either as a result of underground passages or porosity and that

the 1953 certificate of public convenience and necessity for the Weaver 3–F pool is sufficient support for its proposed condemnation action.

The Parrotts also appeal from the district court's opinion to the extent that it holds that the Natural Gas Act, 15 U.S.C. § 717f(h) authorizes the use of eminent domain authority for condemnation of gas storage easements. Their contention on their cross appeal is that there is simply no language in the Natural Gas Act which refers to condemnation for gas storage purposes. They also vigorously disagree with Columbia's argument that its gas now underlies their land.

The District Judge made the following findings of fact:

## FINDINGS OF FACT

1. Columbia is a Delaware Corporation engaged in the production, purchase, storage, and interstate transportation and sale of natural gas in interstate commerce in the states of Kentucky, Maryland, New York, Ohio, Pennsylvania, Virginia, and West Virginia. Columbia's principal place of business is located in Charleston, West Virginia.

2. Columbia operates underground storage fields as an integral part of its natural gas transmission function. Columbia must store excess gas during the summer for use during the winter when cold weather causes market demands to exceed the capacity of production and transmission pipelines. Columbia could not produce adequate supplies of natural gas for its wholesale customers and through them to the gas consuming public without the use of underground storage facilities.

3. Columbia operates a natural gas storage field in Richland and Ashland Counties of Ohio which is known as the Weaver Storage Field. Within the Weav-

---

1. It may be possible for the actual facts on this aspect of this dispute to be ascertained because Columbia's stored gas is transported by pipeline

and treated with a scent before being placed in the pipeline.

er Storage Field is a gas storage pool which is known as the Weaver 3–F pool.

4. The gas in the Weaver Field is stored in a geological formation known as the Clinton formation, which is a porous and permeable[2] layer of rock approximately 2,900 feet beneath the earth's surface.

5. A certificate of public convenience and necessity was issued on February 6, 1953 to the Ohio Fuel Gas Company, predecessor Company of Columbia, by the Federal Power Commission, predecessor agency of the Federal Energy Regulatory Commission.

6. The certificate of public convenience and necessity was issued based on the information in the application before the Federal Power Commission. The application before the Federal Power Commission included a map outlining an area of land in Ashland and Richland Counties, Ohio.

7. The tract of land owned by the defendants is not within the boundaries of the Weaver Field as set forth on the map included in the application for the certificate of public convenience and necessity which was presented to the Federal Power Commission.

578 F.Supp. 930, 932 (N.D.Ohio 1983).

As to the contentions advanced by appellant Columbia and by cross-appellant Parrotts, the District Judge said in part:

2. The power of eminent domain given to a holder of a certificate of public convenience and necessity, to obtain an easement for the underground storage of natural gas, extends only to the property located within the geographical area designated on the map or maps attached to the application for the certificate of public convenience and necessity as required by 18 C.F.R. § 157.14(a)(6).

3. As the property of the defendants, i.e. the Parrott property, is not within the designated area of the certificate of public convenience and necessity issued to Columbia, Columbia does not have the right to acquire an easement for the underground storage of natural gas on the Parrott property by the power of eminent domain.

*Id.*

We affirm the District Court on both issues.

**I. Columbia's Claim of a Right to Condemn Under the 1953 Certificate**

In 1953, Ohio Fuel Gas Company, a predecessor of Columbia, obtained a certificate of public convenience and necessity to develop a storage pool in the Weaver field. The new pool, Weaver 3–F, was to be located in Richland and Ashland Counties. The portion of the Weaver 3–F facilities in Ashland County was located primarily in Sections 17 and 18 of Hanover Township. Parrotts' tract is located one to two miles east of the pool as described in the application. In the application submitted in 1953, the Weaver 3–F pool's size, location, and boundaries were estimated on the basis of the then available geological and engineering data. The certificate of public convenience and necessity issued by the Federal Power Commission in 1953 specifically incorporated Ohio Fuel Gas Company's estimation of the size, location, and boundaries of the underground storage area. Columbia now contends that the 1953 estimate of the size and boundaries of the Weaver 3–F pool was substantially in error.

Columbia's storage operations and monitoring of the wells surrounding the Weaver 3–F pool convinced it, over a period of years, that the Weaver 3–F pool was larger than estimated in 1953. Since at least 1965, Columbia has acted on its new estimates and expanded its storage operations outside of the area covered by the 1953 certificate. In neither the 1965 expansion, nor an expansion undertaken in 1971, did Columbia seek or obtain a certificate of public convenience and necessity authorizing the expansion of its operations. This record does not indicate that these expansions were called to the attention of the

2. Porous refers to the existence of spaces or pores within the rock; permeable refers to the ability of the gas to travel between the spaces or pores in the rock.

Federal Energy Regulatory Commission or its predecessor. The 1971 expansion first opened storage wells in Section 14 of Hanover Township, in the vicinity of the Parrott tract. In 1980, Columbia first approached the Parrotts to obtain their mineral rights. Unsuccessful negotiations, plus Parrotts' intention to drill for natural gas on this tract and Columbia's belief that any drilling by Parrotts would produce stored gas owned by Columbia and not "native" gas, led to this litigation.

## II.

In responding to the principal issue posed by this case in Columbia's appeal, we turn to the language of the Natural Gas Act. 15 U.S.C. § 717f(c) states:

No natural-gas company ... shall ... undertake the *construction or extension of any facilities* [for the transportation or sale of natural gas], ... or operate any such facilities or extension thereof, *unless there is in force with respect to such natural gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations....* (Emphasis added).

Further the Act in 15 U.S.C. § 717f(h) authorizes condemnation of only two classes of land rights:

[T]he necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, *or other stations or equipment* necessary to the proper operation of such line or pipe lines....

We believe and hold that the purpose for which Columbia seeks to condemn is most specifically covered by the second part of Section 717f(h) which allows for condemnation of "necessary land" for "location of *compressor stations, pressure apparatus or other stations or equipment* necessary to the proper operation of such pipeline...."

Like the District Judge, we read the words italicized above as sufficiently broad to encompass the underground gas storage facility with which this case is concerned and thus allow for condemnation—but only if a certificate of convenience and necessity has been applied for and issued by the Commission. The plain language of the statute (see 15 U.S.C. § 717f(c) above) seems to us as it did to the District Judge to require this holding.

## III.

Parrotts appeal the determination by the district court that Section 7(h) of the Natural Gas Act authorizes the use of eminent domain to condemn easements for the storage of gas in underground storage pools. The Act provides:

When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. § 717f(h).

We recognize, of course, that in dealing with Columbia's appeal, we have been required in effect to assume an adverse answer to Parrotts' appeal. Nonetheless, we shall deal with it as a new issue.

Parrotts correctly note that the eminent domain authorization does not specifically mention the use of the condemnation procedures for underground gas storage areas. This, however, does not resolve the issue. The use of condemnation for underground

facilities is within the spirit and intent of the Act. As the district court reasoned:

The Act does provide that eminent domain power may be used to insure the operation of stations or equipment necessary to the proper operation of natural gas pipelines. Underground gas storage facilities are a necessary and integral part of the operation of piping gas from the area of production to the area of consumption. Given the importance of natural gas underground storage facilities to the overall function of supplying natural gas to the consuming public, the underground facilities fall within the intent of the legislature to provide the use of eminent domain to acquire the right-of-way for stations or equipment necessary to the proper operation of gas pipelines.

578 F.Supp. at 933. We agree. Principles of strict construction of grants of eminent domain authority, *see Delaware Lackawanna & Western Railroad Co. v. Town of Morristown,* 276 U.S. 182, 192, 48 S.Ct. 276, 278, 72 L.Ed. 523 (1928), and *Richmond v. Southern Bell Telephone and Telegraph Co.,* 174 U.S. 761, 774–75, 19 S.Ct. 778, 782–83, 43 L.Ed. 1162 (1899), do not require us to ignore the broad language of the statutory grant which includes the authority to seek condemnation of "the necessary right-of-way to ... operate ... a pipe line ... for the transportation of natural gas...." 15 U.S.C. § 717f(h).

The district court's resolution of this issue was correct. Consequently, if Columbia secures a valid certificate of public convenience and necessity which includes the area underneath the Parrotts' tract, the Act authorizes the invoking of the power of eminent domain to seek a gas storage easement. Columbia in emphasizing its need for the right to condemn tells us that in peak heating seasons nearly half of the gas supplied comes from underground storage.

The District Judge's findings of fact are not clearly erroneous and we affirm in all respects his conclusions of law.