**COLUMBIA GAS TRANSMISSION CORPORATION, Plaintiff,**

v.

**AN EXCLUSIVE GAS STORAGE EASEMENT IN THE CLINTON SUBTERRANEAN GEOLOGICAL FORMATION IN 19.16 ACRES, CLINTON TOWNSHIP, WAYNE COUNTY, OHIO, and Frederick D. Johnson, II, et al., Defendants.**

No. C85–661A.

United States District Court, N.D. Ohio, E.D.

Aug. 9, 1988.

David D. Noble, Roth, Noble & Rolf, Cleveland, Ohio, Kenneth E. Tawney, Charleston, W.Va., for plaintiff.

John Barrington, Barrington & White, Keith A. Shearer, Pros. Atty., Wooster, Ohio, M. Howard Petricoff, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for defendants.

## ORDER

DOWD, District Judge.

### I.  INTRODUCTION.

On March 7, 1985, the plaintiff, Columbia Gas Transmission Corp., filed the above-captioned condemnation action pursuant to the provisions of the Natural Gas Act, 15 U.S.C. § 717f(h).  Columbia sought to appropriate the exclusive right to use the underground natural gas storage easement in the Clinton formation beneath the *Johnson* property.  Following the Court's holding that Columbia had the right to condemn the subject easement, the case proceeded to a jury trial to determine the value of the condemned easement for purposes of rendering just compensation to the defendants.

The jury found $18,500 to be just compensation for the taking of the easement beneath the *Johnson* property.  By agreement of the parties, the trial was bifurcated so that the Court instead of the jury would have the responsibility to determine all additional elements of just compensation relating to the defendant producers' drill-

ing site preparation costs as well as reclamation costs which under Ohio law will now have to be incurred because the well cannot now be completed or produced.

Before the Court is the motion of the defendants Smail and Wiles ("Producers") to recover costs for improvements (docket # 64). The defendants request the Court to award $19,017.59 [1] as just compensation for the taking by Columbia of the Producers' drilling site located on the *Johnson* property. The Producers further request the Court to declare that all plugging and reclamation costs are the responsibility of Columbia, in which case the defendants agree that Columbia should be entitled to salvage rights.[2]

In response to the motion, Columbia has agreed that the Producers are entitled to recover $235 representing $95 incurred on November 11, 1983 for a drilling permit and $140 incurred on November 30, 1983 for a location survey. Columbia opposes any award of further expenses to the Producers.

For the following reasons, the Court awards to the Producers the sum of $14,689.57 and denies the remainder of the motion for costs and improvements. Further, the Court holds that the plaintiff, Columbia Gas, is responsible for reclamation costs and is also entitled to salvage rights.

## II. OVERVIEW.

The primary issue here is good faith. Columbia agrees that the defendant Producers may recover improvement costs for the drilling site, as well as reclamation costs, so long as the expenses were incurred in good faith. What the Court must determine is which, if any, of the expenses incurred by the Producers (beyond the $235 concededly owing) were incurred in good

faith. Then the Court must address the secondary issue, i.e., of those expenses incurred in good faith, which expenses are recoverable as just compensation for the taking of the drilling site.

## III. POSITIONS OF THE PARTIES AS TO THE GOOD FAITH ISSUE.

Columbia takes the position that, except for the $235 incurred at the very outset for a drilling permit and location survey, all the Producers' expenses were incurred in bad faith because the Producers were on notice that the proposed well site was within the "map area," i.e., the area designated by the FERC certificate as the Columbia storage field.

The Producers do not dispute, and in fact have stipulated, that as early as December 1, 1983, Columbia notified the Producers that Columbia objected to their obtaining a drilling permit because Columbia asserted that the proposed well location was inside the boundaries of Columbia's storage field. The position taken by the Producers, however, is that Columbia's right to condemn was uncertain at best at that time and in fact remained uncertain until some time after the defendants incurred all the expenses connected with the preparation of the drilling site, including the obligation to incur reclamation costs when the well could not produce or stops producing.

## IV. THE COURT'S THRESHOLD THOUGHTS.

In the Court's view, the Court not only has the responsibility to determine the good faith/bad faith issue as it relates to this particular case. The Court must also attempt to fashion some sort of principled method for resolving the good faith/bad faith question in the context of future condemnation actions. The Court finds that to

---

**1.** To support their claim for amount of expenses incurred, defendants have filed copies of all invoices and proofs of payment. The parties have since stipulated that the defendants did in fact incur the expenses detailed in the defendants' submission, although Columbia has not stipulated the reasonableness of the expenses incurred. *See* Stipulation of Facts (docket # 71) at p. 5.

**2.** It appeared from the original briefs that there was a side issue of "timbering" involved. However, the parties have since stipulated that the timbering issue has nothing to do with the present motion and is not before the Court.

derive such a principled method requires the Court to establish a rule that can be applied with at least some measure of objectivity. Thus, although each party here has to some extent questioned the "motive" of the other party in pursuing a certain course of action,[3] it seems to the Court that the important question is not so much motive but reasonableness. A standard based upon motive, which will always be a subjective question, will not provide anything much in the way of a principled method for determining just compensation. However, if the Court phrases the issue as, "Would a reasonable person, knowing the facts and circumstances existing at the relevant time, have proceeded to incur the expenses which he later seeks as just compensation in a condemnation action?" then the Court will, hopefully at least, have provided at least some guidance for addressing the issue in future cases.

In considering the good faith/bad faith question, the Court must attempt to accommodate two equally important, albeit competing, policy interests. On the one hand is the public interest in ensuring the integrity of gas storage fields. On the other hand is the equally important interest of a private property owner in making legitimate and productive use of his property. In the Court's view, it is the Court's responsibility to fashion some rule of reason that will allow the utmost exercise of each interest without unduly impinging upon the other interest.

To illustrate the Court's concern, it might be helpful to pose two hypothetical situations at opposite extremes. Suppose, for example, that in this case it had been absolutely clear that the *Johnson* property lay two miles outside the protective area boundaries of Columbia's storage field, but that Columbia had nonetheless threatened a condemnation action on the grounds of Columbia's belief that the law would eventually develop to a point where Columbia could condemn property within a five mile radius of the storage field boundary. In such a case, it would seem unjust to hold that the producer should be presumed to proceed at his peril in preparing to make productive use of his oil and gas lease and drilling permit. To curtail the Producers' rights under those circumstances would be, in the Court's view, to place extreme and dangerous power into the hands of an entity with condemnation powers.

By way of contrast, suppose that today, against the background of the case law developed thus far, the *Johnson* property lay not merely within the protective area but within the active area of Columbia's storage field. Suppose further that against that background Columbia forewarned the producer against drilling. Under those circumstances it would appear that a reasonable person would know that Columbia had a reasonably certain right to condemn the subject property and that a producer should therefore be held to proceed at his own risk if he chooses to incur expenses to prepare the drilling site.

■ For these reasons, the Court first holds that in a gas storage easement condemnation action, where the condemnee seeks just compensation for expenses and obligations (such as reclamation costs) incurred in connection with preparing the subject site for drilling, the condemnee may recover such expenses, subject to the condition that the expenses are reasonable in amount, and subject to the further condition that a reasonably prudent person, knowing the facts and circumstances existing at the relevant time, would have proceeded to incur such expenses.

The facts of the present case, of course, fall somewhere in between the two hypothetical situations posed above. Against the general legal standard which the Court has determined should govern, the Court must determine whether a reasonable person, knowing the facts and circumstances existing at the time the Producers incurred

---

**3.** For example, the Producers accuse Columbia of "gambling" because Columbia released its storage lease on the *Johnson* tract in 1973. Columbia, in turn, says it was the Producers who "gambled" by proceeding with site preparation in face of the threat of condemnation. Columbia also suggests that the Producers engaged in conduct whereby they "planted" the site improvements in a deliberate attempt to "up the price," so to speak, of the just compensation.

various expenses and obligations connected with drilling the site, would have proceeded to incur those expenses. The answer depends upon whether it appeared reasonably certain that Columbia had the right to condemn the *Johnson* property at the time the Producers' expenses were incurred.

## V. FACTS.

The parties have greatly assisted the Court by submitting a comprehensive stipulation of facts (docket # 71), a copy of which is attached to this order as Appendix A. As an aid to comprehension, the Court has also attached copies of Columbia's FERC certificate map as it existed when this action was first filed (*see* Appendix B) and the relevant portion of the FERC certificate map issued on March 18, 1987 (*see* Appendix C).

### A. *Boundaries.*

The maps define the boundaries of the territory known as the Wayne Storage Field for which FERC issued to Columbia (or its predecessor in interest) a certificate of public convenience and necessity for the purpose of maintaining an underground natural gas storage field. As one can observe by comparing the two FERC maps, on the original map (Appendix B) the *Johnson* property was precisely on the boundary of the outer limits of the protective area of the storage field. On the more recent map (Appendix C) the "map area" of the storage field was expanded so that the *Johnson* property was clearly within the certificated protective area of the storage field. The earlier map (Appendix B) was in force from 1953 until March 18, 1987, when FERC issued the new certificate covering the expanded certificated "map area" as shown in Appendix C. Columbia submitted the expanded map to FERC on January 23, 1986, when it applied to FERC for an enlargement of the storage field.

### B. *Sequence of Events.*

In 1952, before any of the defendants in this case acquired rights in the subject property, Columbia[4] entered into a lease with the then owner of the *Johnson* property. The lease gave Columbia the right to produce and/or store natural gas under the *Johnson* property. In 1953, FERC issued a certificate of public convenience and necessity authorizing Columbia to operate the Wayne Storage Field as defined by the map attached to this order as Appendix B. According to an earlier stipulation of the parties filed September 29, 1987 (docket # 55) "The whole of the *Johnson* tract was not within the proposed storage field as defined by this certificate." Stipulation at ¶ 4. In 1973, Columbia released its combination production and storage lease for the *Johnson* tract.

On February 27, 1981, the defendants, Frederick and Patricia Johnson, took title to the *Johnson* property. On September 20, 1983, they granted the defendant Producers (Smail and Wiles) an oil and gas production lease. Soon after, on November 14, 1983, the Producers applied for a drilling permit from the State of Ohio.

On December 1, 1983, Columbia notified the Producers that the proposed well location was within Columbia's Wayne Storage Field. Columbia threatened condemnation and repeated such warnings later. Columbia also filed an objection to the issuance of a drilling permit with the State of Ohio.

On December 28, 1983, this Court decided the *Parrott* case (C82–3619A), [*Columbia Gas Transmission Corp. v. An Exclusive Gas Storage Easement*] 578 F.Supp. 930, in which the Court held:

a) Columbia has the right to condemn property within the boundaries of the FERC certificate map.

b) The right to condemn extends only to property within the boundaries of the map attached to the FERC certificate.

c) Since the *Parrott* property was outside the FERC boundaries, Columbia could not condemn the *Parrott* property.

---

**4.** For sake of clarity, the Court will use the term Columbia Gas to refer also to any of Columbia's predecessors in interest such as the Ohio Fuel Gas Company. The Court will also use the term FERC to include FERC's predecessor The Federal Power Commission (FPC).

From December 28, 1983 through October 30, 1985, the *Parrott* case was pending on appeal. The appeal also involved a cross-appeal whereby the landowners challenged this Court's ruling that Columbia has *any* right to condemn.

Meanwhile, throughout the year 1984, the dispute dragged on about whether the State of Ohio should issue the requested drilling permit to the Producers. The permit was eventually issued on December 14, 1984.

On March 4, 1985, the Producers began site preparation at the *Johnson* property drilling site. Columbia's lawyer notified the Producers' lawyer of Columbia's intent to apply for a temporary restraining order to halt the drilling. Defendants continued the site preparation.

On March 7, 1985, Columbia filed the above-captioned *Johnson* condemnation action and application for TRO.

On March 11, 1985, the parties agreed to a preliminary injunction which allowed the Producers to drill to a depth of no more than 600 feet and to set "surface casing." Drilling to the Clinton formation some 3000 feet beneath the property was otherwise enjoined pending the outcome of this suit.

On October 30, 1985, the Sixth Circuit affirmed the *Parrott* decision in all respects. *See* 776 F.2d 125. This Court then addressed the new issue presented by *Johnson*, i.e., does Columbia have the right to condemn property which is outside the active storage area but inside the protective area of a storage field? For purposes of the summary judgment motion addressing that issue, the parties stipulated that the *Johnson* tract lay within the protective area of the storage field, although the expanded storage field map (*see* Appendix C map) had not yet been approved by FERC. On March 28, 1986, the Court held that Columbia has the right to condemn property which is outside the active storage area but inside the protective area, since both areas are within the geographical area designated on the map attached to the FERC certificate. The Court thus held that Columbia had the right to condemn the *Johnson* property.

## VI. ANALYSIS.

### A. *Good Faith.*

Under the above undisputed sequence of events, the Court must ask: at what point in the relevant time line would a reasonably prudent person have declined to proceed with drilling preparation activities? The Court concludes the answer is: when it first appeared reasonably certain that Columbia had the right to condemn the *Johnson* property.

■ To determine when Columbia's right to condemn appeared reasonably certain, the Court finds it must take into consideration the evolving state of the law.

When Columbia first threatened the Producers with condemnation proceedings, the Court had not yet decided the *Parrott* case. The *Parrott* case was a case of first impression in which the issue was whether Columbia had *any* right to condemn underground storage easements in view of the fact that the Natural Gas Act did not expressly authorize Columbia to acquire property rights for underground storage areas. Even though this Court eventually decided that Columbia had the right to condemn underground storage areas within the boundaries of the FERC certificate, the Court must further remember that the *Parrott* decision was not affirmed by the Sixth Circuit until October 30, 1985.

The case on appeal involved two aspects. First, Columbia appealed the Court's holding that Columbia had no power to condemn property which lay outside the certificated boundaries of the storage field. Second, the landowners cross-appealed the Court's holding that Columbia had the power to condemn easements for underground storage facilities. The landowners relied upon well settled law which held that grants of eminent domain authority should be strictly construed. *See Columbia Gas Transmission Corp. v. An Exclusive Gas Storage Easement, et al. (Parrott),* 776 F.2d 125, 129 (6th Cir.1985) (citations omitted).

1248

In light of the fact that *Parrott* was a case of first impression, in the Court's view the *Parrott* holding cannot be said to represent settled law until this Court's decision was affirmed in all respects by the Sixth Circuit on October 30, 1985. Therefore, until October 30, 1985 the Court concludes it did not appear reasonably certain that Columbia had the right to condemn underground storage easements. Accordingly, the Court finds that a reasonable person might conclude that he could proceed with drilling activities, despite Columbia's threatened condemnation and even despite the pendency of the present condemnation action.

■ The Court must next examine the situation after October 30, 1985. With the affirmance of the *Parrott* holding, there can be no doubt that it appeared reasonably certain that Columbia had the power to condemn property which lay inside the certificated boundaries of a storage field. The next question is how the *Parrott* decision would have affected the decision making process of a reasonable producer situated, as these Producers were, on the *Johnson* property.

The *Johnson* property was flush on the outside boundary of the protective area of the Wayne storage field as it existed according to the FERC map in effect from 1953 until 1987 (the Appendix B map). Further, the parties had earlier stipulated that the *Johnson* property was not wholly within the storage field. Add to this the fact that the *Johnson* case itself presented the next in a series of issues which had never yet been decided. The issue presented in *Johnson* was: does Columbia have the power to condemn property which lies outside the active storage area, but inside the protective area, of a gas storage field?

This issue was presented to the Court via a motion for summary judgment filed by the defendants. For purposes of aiding the Court in resolving the motion, the parties stipulated that the *Johnson* property fell within the protective area of the storage field. In an extension of its prior rationale in the *Parrott* case, on March 28, 1986 the Court held that Columbia has the power to condemn property in both the active and the protective areas of a storage field. The Court stated, "The [FERC] certificate contemplates the use of property located within both areas, and the Court concludes that land located within that protective area is subject to condemnation proceedings under § 717f(h) as explained in this Court's opinion in [*Parrott*]." Memorandum Opinion of March 28, 1986 (docket #32) at p. 5.

In support of their motion for costs of improvement, the Producers contend that it was not until the Court's ruling on March 28, 1986 that Columbia obtained the right to condemn the *Johnson* property. However, the Court finds that the *Johnson* holding was such a logically progressive extension of the *Parrott* holding that, once *Parrott* was affirmed on October 30, 1985, it appeared reasonably certain that Columbia had the right to condemn the *Johnson* property, so that a reasonably prudent person would not have proceeded to incur further drilling expenses prior to final resolution of the present case. The Court finds this to be true despite the fact that it was not actually until March of 1987 that FERC issued the new certificate expanding the Wayne storage field as shown in the map at Appendix C.

The Court concludes that October 30, 1985 is the most equitable and logical line of demarcation in the present case. The defendant Producers shall therefore be awarded all allowable expenses incurred before but not after October 30, 1985. Since the vast majority of the allowable expenses, especially site preparation and drilling expenses, were incurred "in good faith" prior to October 30, 1985, Columbia shall be responsible for reclamation costs of the drilling location, with the understanding that Columbia shall also have salvage rights.

B. *Allowable Categories of Expenses.*

Even assuming that all expenses were incurred in good faith, Columbia has further argued that certain categories of expenses should not be held recoverable as just compensation. Specifically, Columbia objects to $5,431.95 representing lease ac-

quisition payments and legal expenses. Columbia claims that such expenses are not properly "site preparation" costs.

In ¶¶ IV, V and VI of the parties' Stipulation, the parties have broken down the $5,431.95 into three categories:

1. $ 601.00 (lease and right of way costs; *see* Stipulation ¶ IV)
2. 1,464.35 (legal fees for drilling permit; *see* Stipulation ¶ V)
3. 3,366.60 (legal fees and litigation expenses for first part of this case, *see* Stipulation ¶ VI)

$5,431.95 Total

■ As to the lease acquisition and right of way costs ($601.00), the Court finds well taken the following argument presented by Columbia:

> The lease acquisition costs ... are the expenses that gave the defendants the right to participate in the jury verdict and presumably they have been reimbursed for those expenses by that verdict. These costs were considered in the economic analysis that was done to determine just compensation. Therefore these items should not be reconsidered in this motion.

Plaintiff's Memorandum Opposing the Defendants' Motion to Recover Costs for Improvements (docket # 68) at p. 9.

The Court will accordingly decline to award the $601.00 representing lease acquisition and right of way costs.

As to the $1,464.35 representing legal fees for the drilling permit, the parties have stipulated:

> Because of opposition to the issuance of the drilling permit for the proposed well on the *Johnson* tract, the Defendants incurred legal fees which are not ordinarily incurred in the permitting process. Columbia opposed the issuance of a drilling permit in order to protect its storage field. The Nature Conservancy later joined Columbia in opposition for environmental reasons. The permit, with special environmental conditions was eventually granted.

Stipulation of Facts (docket # 71) at ¶ V.

■ All legal fees in this category were incurred before the cut-off date established by the Court of October 30, 1985 and thus, by the Court's definition, were incurred in good faith. To implement the goal of just compensation, which is to make the condemnee whole, the Court concludes that the Producers should be awarded legal fees for obtaining the drilling permit which has now been rendered of no value to the Producers as a result of the condemnation. The Court will allow the Producers to recover the $1,464.35 representing legal fees for the drilling permit.

■ Turning to the $3,366.60 representing legal fees and litigation expenses for the first part of this case, the Court notes the parties' stipulation that these were expenses "associated with the fight over the injunction to prohibit drilling and other litigation expenses incurred before Mr. Petricoff entered his appearance." Stipulation of Facts at ¶ VI. The Court concludes that the Producers are not entitled to recover the $3,366.60 because such expenses connected with defending a condemnation action are not truly "costs for improvements" of the subject property.

Finally, the parties have stipulated at ¶ VII of the Stipulation that certain expenses totaling $13,350.22 fall into the category of "site preparation and drilling expenses." This is the type of expense to which Columbia does not object, assuming the good faith of the Producers in incurring them.

The Court notes that out of the $13,350.22 in this category, $360.00 (*see* items 39 and 40) was incurred after the cut-off date of October 30, 1985. In this category, therefore, the Court will award the Producers $13,350.22 less $360.00, which comes to a total of $12,990.22.

## VII. CONCLUSION.

For the reasons stated above, the motion of the defendants James R. Smail and R. Daniel Wiles to recover costs for improvements (docket # 64) is granted in part and denied in part. The defendant Producers shall be awarded the following expenses incurred prior to October 30, 1985:

1. $   235.00   (unopposed by Columbia)
2.     1,464.35   (representing legal fees for drilling permit as detailed in ¶ V of the Stipulation of Facts (docket # 71))
3.    12,990.22   (representing site preparation and drilling expenses incurred prior to October 30, 1985, as further detailed in ¶ VII of the Stipulation of Facts (docket # 71))

   $14,689.57   (Total)

Accordingly, it is hereby ordered that the plaintiff Columbia Gas Transmission Corporation shall pay to the defendants James R. Smail and R. Daniel Wiles the sum of $14,689.57. Further, the plaintiff Columbia Gas Transmission Corporation is hereby adjudged responsible for reclamation costs of the subject drilling site, and is further adjudged entitled to the salvage rights connected therewith.

IT IS SO ORDERED.

## APPENDIX A

### STIPULATION OF FACTS

July 13, 1988

### INTRODUCTION

The parties stipulate the following facts to aid the court's determination of the Defendants' Motion to Recover Costs for Improvements.

### I. COLUMBIA'S RIGHT OF CONDEMNATION

The parties have previously stipulated that at all relevant times the Johnson property was outside the active storage area, but within the protective area as defined by the maps incorporated in the Certificate of Public Convenience and Necessity issued by the Federal Energy Regulatory Commission for the Wayne Storage Field. Using this stipulation, this court determined in its decision of March 28, 1986, denying the Defendant's Motion for Summary Judgment, that Columbia had the right to condemn the underground natural gas storage easement in the Clinton formation beneath the Johnson property. This means that Columbia had the right to condemn the easement before any of the Defendants acquired title to the property, but neither took title nor filed for condemnation until after the Defendants obtained their rights to the Subject Tract.

### II. CHRONOLOGY OF EVENTS CONCERNING DRILLING ACTIVITIES ON THE JOHNSON PROPERTY

| Date | Event |
| --- | --- |
| 03/09/73 | Columbia Gas Transmission Corporation releases its production storage lease on the Subject Tract. (Stipulation of Facts No. 6) |
| 02/27/81 | Frederick D. Johnson and his wife, Patricia Johnson, take title to approximately 20 acres in Clinton Township, Wayne County, Ohio from Frederick Johnson's parents (hereinafter Johnson tract). |
| 09/20/83 | The Johnsons grant an oil and gas production lease to the partnership of Daniel Wiles and James Smail (hereinafter Producers). |
| 11/14/83 | The Producers file for a drilling permit on the Johnson tract with the Ohio Department of Natural Resources, Oil and Gas Division. |
| 12/01/83 | Columbia Gas Transmission Corporation (hereinafter Columbia) writes to the Producers objecting to the drilling permit application on the Johnson tract, because Columbia believes the tract is within the Wayne Storage Field. |
| 12/06/83 | Columbia files an objection to the Producers' drilling permit for the Johnson tract with the Ohio Department of Natural Resources, Oil and Gas Division. |
| 07/09/84 | Defendants seek variance of the spacing requirement for the proposed Johnson well, to support their application for a drilling permit. |
| 07/23/84 | Columbia writes to both the Producers and the Ohio Department of Natural Resources, Oil and Gas Division, to renew its objections to a drilling permit for the Johnson tract and to restate its belief that the proposed well threatens the storage field. |
| 12/14/84 | The Ohio Department of Natural Resources, Oil and Gas Division, issues Permit 4017 to the Producers to drill a well to the Clinton formation on the Johnson tract. |
| 03/04/85 | Producers move bulldozers and other heavy equipment onto the Johnson property to begin drill site preparations. |
| 03/06/85 | Columbia's lawyer informs the Producer's lawyer that he will seek a temporary restraining order to stop the drilling activity. The Producer's lawyer agrees to appear in Federal Court the next day to oppose the issuance of such an order. |

Date | Event
03/07/85 Columbia files a petition for condemnation of the Johnson tract, and seeks a temporary restraining order preventing drilling by the Producers on the Johnson tract. Case assigned to Judge Lambros.

03/07/85 (evening) In Judge Lambros' absence, Judge Aldridge, sitting as Miscellaneous Judge, hears oral argument by both Columbia and the Producers regarding the issuance of a temporary restraining order preventing any drilling on the Johnson tract. Judge Aldridge refuses to issue the temporary restraining order.

03/11/85 Although the Producers indicated to Judge Aldridge that drilling would commence over the weekend, it did not start by the time Judge Lambros returned on Monday morning. Columbia renews its motion for a temporary restraining order before Judge Lambros. Following oral argument by both counsel for Columbia and the Producers, Judge Lambros indicates that he is persuaded to issue an order restraining drilling activities, and to start an immediate hearing. Following this statement, the parties orally agree to present the court with a stipulated preliminary injunction whereby the Producers can drill and set surface casing to a depth of no greater than 600 feet, but are enjoined from drilling any deeper during the pendency of the complaint filed before the court on March 7, 1985.

03/18/85 The stipulated preliminary injunction is reduced to writing and issued by the court.

03/25/85 Producers file an answer to the complaint stating that Columbia lacks the authority to condemn the Johnson tract, and/or prohibit the Producers and Johnsons from drilling.

03/28/86 Memorandum opinion of the District Court holding that under the Natural Gas Act, a natural gas company can condemn storage easements in the protective area around an underground storage field as well as the active storage reservoir.

09/28/87 A jury trial is conducted to determine the value of the Clinton formation within the 20 acre Johnson tract. The court bifurcates the issue of site preparation with an order which states in pertinent part: "Upon agreement of the parties, the court removed from the jury all elements

Date | Event
of compensation arising from expenditures relating to site preparation for the proposed well on the Johnson property, and reclamation costs for said well."

01/12/88 The Defendants file a motion to recover costs for improvements.

04/13/88 The Plaintiff files a memorandum opposing the motion to recover costs for improvements.

05/03/88 Defendants file a reply memorandum.

## III. CHRONOLOGY AND CATEGORIZATION OF EXPENDITURES CLAIMED IN DEFENDANTS' MOTION

The following lists separate the various expenditures in the Table at the end of the Defendants' Memorandum in support of their motion by date and the type of expenditure. All of the costs listed on the Defendants' Table appear in these lists except Items 1 and 3, totaling $235, which the Plaintiff agrees are recoverable.

As to all of the remaining costs the parties stipulate that the Defendants in fact incurred these expenses. The Plaintiff does not stipulate that it was reasonable to incur any expenses for any of the items purchased or that the amounts spent for any particular item were reasonable.

## IV. LEASE AND RIGHT–OF–WAY COSTS

The first type of expense reimbursement requested in the Plaintiff's Memorandum are the costs incurred by the Producers to acquire the right to drill a well on the Johnson tract including a right-of-way for a gas pipeline. The two lease payments in 1984 (Items 6 and 9) are delay rentals that were paid to the Johnsons to maintain the validity of the lease during its primary term until a well which was being contested could be drilled. The final item is the cost of recording the agreement relating to the division of the costs of this litigation between the Producers and the Johnsons.

| Item | Date | Paid to | For | Amount |
|------|------|---------|-----|--------|
| 2 | 11/18/83 | Frederick D. Johnson | Lease payment | $100.00 |
| | | Wayne Co. Recorder | Recording fees | 21.00 |
| | | John Barrington | Legal fees | 155.00 |

| Item | Date | Paid to | For | Amount |
|---|---|---|---|---|
| 6 | 4/18/84 | Frederick D. Johnson | Lease payment | $100.00 |
| 9 | 10/10/84 | Frederick D. Johnson | Lease payment | 100.00 |
| 15 | 3/7/85 | Lisa Rupp | Fred Weekley Right of Way | 100.00 |
|  |  | Wayne County Recorder | Recording Costs for Weekley Right of Way | 10.00 |
| 41 | 8/28/87 | Wayne County Recorder | Recording fees for lease agreement | 15.00 |
|  |  |  | TOTAL PAID | $601.00 |

## V. LEGAL FEES FOR DRILLING PERMIT

Because of opposition to the issuance of the drilling permit for the proposed well on the Johnson tract, the Defendants incurred legal fees which are not ordinarily incurred in the permitting process. Columbia opposed the issuance of a drilling permit in order to protect its storage field. The Nature Conservancy later joined Columbia in opposition for environmental reasons. The permit, with special environmental conditions was eventually granted.

| Item | Date | Paid to | For | Amount |
|---|---|---|---|---|
| 4 | 12/5/83 | John Barrington | November 1983 Statement to James R. Smail Recording Costs Advanced | $23.50 |
| 5 | 12/17/83 | John Barrington | November 1983 Statement to R. Daniel Wiles Preparation of Title | 75.00 |
|  |  |  | Preparation of Affidavit of Non–Compliance | 35.00 |
| 7 | 9/7/84 | Barrington & White | August 1984 Statement | 145.85 |
|  |  |  | Legal fees | |
| 8 | 10/4/84 | Barrington & White | September 1984 Statement | 277.50 |
|  |  |  | Legal fees | |
| 10 | 11/7/84 | Barrington & White | October 1984 Statement | 165.00 |
|  |  |  | Legal fees | |
| 11. | 12/7/84 | Barrington & White | November 1984 Statement | 45.00 |
|  |  |  | Legal fees | |
| 13. | 12/7/84 | Barrington & White | December 1984 Statement | 270.00 |
|  |  |  | Legal fees | |
| 14. | 2/6/85 | Barrington & White | January 1985 Statement | 37.50 |
|  |  |  | Preparation of Response to Appeal | |
| 16. | 3/12/85 | Barrington & White | February 1985 Statement | 15.00 |
|  |  |  | Telephone Conference Division of Oil & Gas Hearing of Board of Review | 375.00 |
|  |  |  | TOTAL PAID | $1,464.35 |

## VI. LEGAL FEES AND LITIGATION EXPENSES FOR THE FIRST PART OF THIS CASE

The following are legal fees and litigation expenses associated with the fight over the injunction to prohibit drilling and other litigation expenses incurred before Mr. Petricoff entered his appearance.

| Item | Date | Paid to | For | Amount |
|---|---|---|---|---|
| 22. | 3/30/85 | Garrett Reporting Service | Reporting fee for deposition of Jack L. Wilson | $30.00 |
| 25. | 4/4/85 | Barrington & White | March 1985 Statement to James R. Smail Legal fees | 22.50 |
| 27. | 4/8/85 | Barrington & White | March 1985 Statement to Ohio Eastern for Legal fees including hearings in Akron and Cleveland Federal Court Preparation for depositions Negotiations with Columbia and document preparation | 1,792.50 |
| 28. | 4/9/85 | Florine I. Varner | Copy of Smail and Wiles depositions | 64.60 |
| 32. | 10/24/85 | Barrington & White | September 1985 Statement Legal fees | 22.50 |
| 33. | 12/31/85 | E.O. Gregory Enterprises, Inc. | Geological Evaluation | 444.00 |
| 34. | 2/20/86 | Barrington & White | January 1986 Statement Legal fees | 52.50 |
| 35. | 3/10/86 | Barrington & White | February 1986 Statement Legal fees | 442.50 |
| 36. | 4/15/86 | Barrington & White | March 1986 Statement Legal fees | 7.50 |
| 38. | 6/24/86 | Barrington & White | May 1986 Statement Legal fees | 30.00 |
| 42. | 8/31/87 | Barrington & White | August 1987 Statement Legal fees | 33.00 |
| 43. | 9/21/87 | National Minerals Corporation | Give deposition, review of Friend & Chase depositions prepare materials requested by Columbia and revise reserve calculations | 425.00 |
| | | | TOTAL PAID | $3,366.60 |

## VII. SITE PREPARATION AND DRILLING EXPENSES

The following are the costs of preparing the site and drilling and casing a 600 foot deep hole on the location. These expenditures began on March 3, 1985, and continued for several weeks. In as much as it is impossible to get accurate daily costs during this period, the parties stipulate that expenditures were incurred at the rate of $200 per day.

| Item | Date | Paid to | For | Amount |
|---|---|---|---|---|
| 12. | 12/7/84 | R.W. Gasbarre & Associates | Relocation of Johnson well | $114.34 |

| Item | Date | Paid to | For | Amount |
|------|------|---------|-----|--------|
| 17. | 3/21/85 | Deeser Excavating Co. | Clearing and Cut Location | $3,745.79 |
| 18. | 3/21/85 | Clark Clay Co. | Dike on location | 2,453.34 |
| 19. | 3/27/85 | Tidalwave Services | Transportation of brine water and injection fee Transportation of pit water | 293.25 |
| 20. | 3/27/85 | Frontz Drilling | Drilling Services | 1,750.00 |
| 21. | 3/27/85 | Halliburton Services | | |
| | | Ck. # 6926 | Cement Annulus | 564.60 |
| | | Ck. # 6927 | Cement 11¾" Cond. Pipe | 617.12 |
| 23. | 4/2/85 | Ken Miller Supply | Conducter Pipe | 1,534.40 |
| 24. | 4/2/85 | Deeser Excavating Co. | Dig pit for pit tub, push pit dirt off to side location, pull out Frontz drilling rig and grade | 610.00 |
| 26. | 4/5/85 | Ken Miller Supply | Well Supplies | 129.52 |
| 29. | 4/22/85 | Ken Miller Supply | Rental for ½ tank | 250.00 |
| 30. | 5/21/85 | Deeser Excavating Co. | Dip out pit, pull out tub, close pit and grade location | 467.50 |
| 31. | 9/4/85 | Deeser Excavating Co. | Labor and supplies for gate | 140.36 |
| 37. | 6/5/85 | James R. Smail | 8 hours of Dozer to reclaim location | 320.00 |
| 39. | 7/3/86 | James R. Smail | Dozer to repair dike leak, cut water way in lease road, landscape and seeding | 255.00 |
| 40. | 7/31/86 | James R. Smail | Backhoe to repair dike, dig water way across road | 105.00 |
| | | | TOTAL PAID | $13,350.22 |

## VIII. RECLAMATION EXPENSE

The State of Ohio will require the Producers to reclaim the drilling location and return it to its natural condition. This will cost between $3,500 and $10,000 in excess of the value of salvaging the string of casing in the ground. The parties agree that the salvage rights should belong to whomever this court determines should pay for the reclamation.

Since the trial of this action, the Johnsons's have removed timber from the property. The parties agree that reclamation associated with the logging operations are not part of this proceeding.

Respectfully submitted,
(s)David D. Noble
David D. Noble
600 Bond Court Building
1300 East Ninth Street
Cleveland, Ohio 44114
(216) 621–2321
(s)Howard Petricoff
Howard Petricoff
52 Gay Street
P.O. Box 1008
Columbus, Ohio 43216–1008
(614) 464–5414

## APPENDIX B

G ·1985
Supplement #1

THE OHIO FUEL GAS COMPANY
PROPOSED HOLMES STORAGE AREA

|  | 7-A | 7-B | 7-C | 7-D |
|---|---|---|---|---|
| ※ Active wells | 12 | 12 | 32 | 19 |
| • Proposed wells | -28 | 63 | 3 | 16 |

○ Smail-Johnson variance - Permit No. 4017

Proposed lease block of 22500 Ac. of which 14,700 Ac. is now under lease.

Approx. Scale 1" = 1 Mi.

**1256**

APPENDIX C