**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SCOTT FOSTER; NEIL TREMBLAY;
GLENN FOLEY,
*Plaintiffs-Appellants,*

v.

PETER WILSON,
*Defendant-Appellee.*

No. 05-56424

D.C. No.
CV 04-9552
DSF(VBKx)

SCOTT FOSTER; NEIL TREMBLAY;
GLENN FOLEY; AND WILLENKEN
WILSON LOH & LIEB LLP,
*Plaintiffs-Appellants,*

v.

PETER WILSON,
*Defendant-Appellee.*

No. 05-56743

D.C. No.
CV 04-9552
DSF(VBKx)

OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
June 7, 2007—Pasadena, California

Filed October 5, 2007

Before: Daniel M. Friedman,* Alex Kozinski, and
Ronald M. Gould, Circuit Judges.

*Daniel M. Friedman, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

13553

Opinion by Judge Friedman

## COUNSEL

William A. Delgado and Jason H. Wilson, Willenken Wilson Loh & Lieb LLP, Los Angeles, California, for appellants Scott Foster, Neil Tremblay, and Glenn Foley in Case No. 05-56424.

Shaun P. Martin, University of San Diego Law School, San Diego, California, for appellants Scott Foster, Neil Tremblay, and Glenn Foley and Willenken Wilson Loh & Lieb LLP in Case No. 05-56743.

Rick Augustini, Law Office of Rick Augustini, Irvine, California, for appellee Peter Wilson in both cases.

## OPINION

FRIEDMAN, Circuit Judge:

The principal issue is whether the district court correctly dismissed, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief could be granted, a complaint alleging federal securities fraud. We affirm that dismissal, but reverse the district court's imposition of monetary sanctions against the appellants and their attorney.

The issues were presented in two separate appeals which were argued consecutively. We decide both appeals in a single opinion.

I

A.   The background facts, as alleged in the first amended complaint ("amended complaint"), may be summarized as follows:

The appellants Foster and Foley hired the appellee Wilson "as a consultant to help with the business affairs of their then-employer, Precision Vascular Systems ('Precision Vascular')." "Wilson represented to [them] that he was a consultant for many different companies that would be profitable investments and that he would introduce Foster and Foley to such investments." Wilson subsequently extolled to the appellants the prospects of a company called Car Rental Direct ("CRD"), which was "in the business of renting cars to consumers on a long term basis." Wilson "held himself out as a consultant for the company" and stated that he "received an equivalent value in shares of CRD for every investment dollar he brought to CRD."

When the appellants "indicated to Wilson they were interested in purchasing shares of CRD and would seek out a broker," he told them that "they should not buy shares through a broker but that they should buy shares through him because of his special relationship with CRD. Wilson ultimately convinced Plaintiffs to buy shares through him by promising them: 'I won't let you lose money on this deal.' "

> Based on these many representations, in June 2002, Foster, Foley, and Tremblay provided Wilson with $100,000, $30,000, and $20,000, respectively, so that he could purchase CRD shares from CRD in an equivalent value on their behalf. Wilson represented he would immediately purchase shares of CRD from CRD for Plaintiffs and provide Plaintiffs with certificates.

> Subsequent thereto, Wilson provided Foley with a certificate for shares in CRD Holdings, Inc. ("CRDH")—a holding company for CRD—made out to Scott Foster in the amount of 50,000 shares. However, the majority of these shares was to be returned to Wilson himself and did not represent the sum total of shares equivalent to Plaintiffs' $150,000

investment. As such, Wilson still had to provide Plaintiffs with more shares.

Shortly thereafter, CRD's fortunes began to decline, and in June 2003 the company became bankrupt.

The appellants' attempts to obtain the additional shares from Wilson were unsuccessful. On one occasion, after Wilson told the appellants that "he had finally received certificates for their shares of CRD stock and would overnight the certificates to Plaintiffs," he "subsequently informed Plaintiffs that CRD had 'mistakenly' provided certificates in the name of Wilson's company."

"When Foster, Tremblay, and Foley confronted Wilson with CRD's bankruptcy, Wilson agreed to guarantee and reimburse Plaintiffs the full $150,000 lost by providing them with shares of Precision Vascular having an equivalent value." "Wilson never provided Plaintiffs with shares of Precision Vascular."

B. The amended complaint (like the original one) contained four claims. Claim 1 alleged federal securities law fraud. The three other claims were state law claims for California securities law fraud, common law deceit and breach of contract.

The federal securities fraud claim alleged that Wilson "used or employed, in connection with the purchase or sale of CRD shares, manipulative or deceptive devices or contrivances, within the meaning of 15 U.S.C. § 78j." It asserted:

> After dissuading Plaintiffs from purchasing CRD stock from a broker, Defendant obtained from Plaintiffs $150,000 for the ostensible purpose of obtaining shares of CRD directly from CRD on their behalves. Plaintiffs provided Defendant with $150,000 to purchase shares in reliance on his statement that he had

a special relationship with CRD and his assurances he would not "let them lose money" on the CRD investment.

. . . Defendant never provided all of Plaintiffs' money to CRD for the purpose of purchasing shares in CRD on Plaintiffs' behalf. Instead, Wilson purchased some shares from CRD on behalf of Foster but used the majority of Plaintiffs' investment to purchase shares on his own behalf and on behalf of his company, KPC.

C.   The district court dismissed the amended complaint for failure to state a claim upon which relief could be granted.

The court dismissed Foley and Tremblay's securities fraud claim because Wilson's failure to deliver any securities to them meant that they were not purchasers of a security. The court dismissed Foster's securities fraud claim because the complaint did not sufficiently allege that Wilson's representations to Foster were false. The court, however, did not immediately dismiss the complaint, but allowed the appellants to amend it to correct the defects it had noted.

The appellants declined to amend and instead "elected to stand on their first amended complaint and on the sufficiency of the allegations alleged therein."

The court then dismissed the federal and state securities fraud claims with prejudice, and, "[t]he sole claim . . . arising under federal law having been dismissed," the court dismissed the remaining state claims without prejudice.

II

A.   Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), prohibits the use "in connection with the purchase or sale of any security . . . , [of] any manipulative

or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe . . . ." Commission Rule 10b-5 implements that provision by making it unlawful "(a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made . . . not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 CFR § 240.10b-5.

In addition to these substantive provisions, Congress has provided, in the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4, special pleading requirements for federal securities fraud claims. "The Act requires [federal securities fraud] plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.' " *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504 (2007).

**[1]** Federal securities fraud, like its common law fraud ancestor, requires knowingly making a false statement with intent to deceive, reliance upon which injures the victim. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). The amended complaint's federal securities fraud charge does not adequately or properly state such a claim. The district court therefore correctly dismissed that count of the complaint for failure to state a claim upon which relief could be granted. Although our ground of decision is not that of the district court, we may affirm the district court's judgment on any ground the record supports. *See Engleson v. Burlington Northern R.R. Co.*, 972 F.2d 1038, 1044 (9th Cir. 1992).

**[2]** The federal securities fraud claim in the amended complaint, after reiterating the statutory language of § 10(b), states that "[a]fter dissuading Plaintiffs from purchasing CRD

stock from a broker, Defendant obtained from Plaintiffs $150,000 for the ostensible purpose of obtaining shares of CRD directly from CRD on their behalves," and that the plaintiffs gave the defendant $150,000 "to purchase shares in reliance on his statement that he had a special relationship with CRD and his assurances he would not 'let them lose money' on the CRD investment." There is no allegation that either of these two statements attributed to the defendant was false.

[3] The complaint then alleges that the "Defendant never provided all of Plaintiffs' money to CRD for the purpose of purchasing shares in CRD on Plaintiffs' behalf. Instead, Wilson purchased some shares from CRD on behalf of Foster but used the majority of Plaintiffs' investment to purchase shares on his own behalf and on behalf of his company, KPC." There is no allegation that when Wilson accepted the $150,000 from the appellants, he intended not to purchase shares for them. All that the complaint alleges is that Wilson agreed to purchase shares for the appellants with the money he received from them, but did not do so. At most, the claim alleges a breach of contract. Such a breach, however, does not constitute federal securities fraud under § 10(b). *See, e.g.*, *Gurary v. Winehouse*, 190 F.3d 37, 44 (2d Cir. 1999) ("The failure to carry out a promise made in connection with a securities transaction is normally a breach of contract.") (internal quotation marks omitted).

The federal securities fraud claim's failure to allege that Wilson intended not to purchase the stock when he accepted the appellants' payment for it stands in stark contrast to that explicit allegation in the appellants' state common law deceit claim. That claim states:

> Defendant's representation that he would purchase $150,000 worth of shares of CRD from CRD on Plaintiffs' behalves was false. At the time that the representations and each of them were made, Defen-

dant knew the representation was false because he intended to use the majority of Plaintiffs' investment to purchase shares in CRD for himself and his company, KPC. Defendant, and each of them, made the representations and each representation with the intent to deceive Plaintiffs and with the intent to induce Plaintiffs' action in reliance thereon.

In view of these allegations in the state law claim, it must be assumed that the lack of a similar allegation in the federal claim reflects the appellants' decision not to base their federal claim upon that theory of intentional misrepresentation. That the omission of that allegation from the federal fraud claim was not inadvertent but was intentional is further suggested by the appellants' declining the district court's invitation to amend their complaint and electing to "stand on . . . the sufficiency of the allegations alleged [in] . . . their first amended complaint."

This fatal deficiency in the federal securities fraud claim goes far beyond a failure to satisfy the enhanced pleading requirements of the Private Securities Litigation Reform Act. If the defect were merely a failure "to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter," *Tellabs*, 127 S. Ct. at 2504, consideration of the allegations in the state law claim might be appropriate. *See Tellabs*, 127 S. Ct. at 2509-11 (in determining whether a federal securities fraud claim adequately alleges scienter under the Litigation Reform Act, "[t]he inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard"; "faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must . . . consider the complaint in its entirety").

**[4]** Here the flaw in the federal securities fraud claim is not a failure to allege sufficient facts, but a failure to state a tenable theory upon which the claim could be established. This

defective claim cannot be saved by incorporating into it a different theory set forth in a state law claim contained in the same complaint.

B. The district court dismissed the three state law claims because, having dismissed the sole federal claim, it "decline[d] to exercise supplemental jurisdiction" over the remaining claims. The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion. *See* 28 U.S.C. § 1367(c)(3); *Fang v. United States*, 140 F.3d 1238, 1243-44 (9th Cir. 1998).

**[5]** The district court did not abuse its discretion in dismissing without prejudice those state law claims. We affirm the district court's dismissal of the sole federal claim, and we also affirm its dismissal of the three state law claims.

## III

A. The facts relating to the sanctions issue are as follows:

In their original complaint, the appellants' federal securities fraud claim was based upon Wilson's alleged oral and written misrepresentations about Car Rental Direct, and his failure to disclose "material facts" that adversely affected that company. The appellants alleged that those actions constituted "manipulative or deceptive devices or contrivances" "in connection with the purchase or sale of CRD shares." In ruling on Wilson's motion to dismiss that complaint, the district court stated:

> Plaintiffs have not pleaded falsity or scienter with the particularity required by the PSLRA. Therefore, Plaintiffs' first claim for relief must be dismissed. However, because Plaintiffs may be able to plead falsity and scienter with the requisite particularity, the Court grants Plaintiffs leave to amend.

In the securities fraud claim of the amended complaint, the appellants did not plead "falsity and scienter with the requisite particularity." Instead, they asserted a different theory of securities fraud, which we have discussed and rejected in Part II: that Wilson accepted money from them to be used to purchase stock in CRD for them, but failed to do so and instead used the money to purchase such shares for himself.

After the district court dismissed the amended complaint, Wilson moved for sanctions against the appellants and their lawyers. He sought $25,871.45, representing his alleged legal fees and expenses in defending against the lawsuit, which he contended had been filed in violation of Rule 11(b) of the Federal Rules of Civil Procedure.

In a detailed memorandum, the district court rejected all the grounds upon which Wilson had sought sanctions. The court then ruled that three statements made in the original complaint were inconsistent with statements in the amended complaint, and that "there was a 'substantial' failure to comply with Rule 11 in that false allegations of misrepresentations formed the basis for the claims in the Initial Complaint, and are precisely the kind of allegations the PSLRA meant to prevent." The court awarded $7,028 as the "reasonable and appropriate" fees Wilson incurred "relating to" the original complaint.

**[6]** B.  As this court has recognized, before sanctions may be imposed upon a party there must be "sufficient, advance notice of exactly which conduct was alleged to be sanctionable." *In re DeVille*, 361 F.3d 539, 549 (9th Cir. 2004) (quoting *Fellheimer, Eichen & Braverman v. Charter Techs.*, 57 F.3d 1215 (3d Cir. 1995). *See also Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 144 (2d Cir. 2000) ("The purpose of particularized notice is to put counsel on notice as to the particular factors that he must address if he is to avoid sanctions.") (internal quotation marks omitted).

**[7]** The only notice the appellants received of the proposed sanctions was Wilson's motion and its attachments. The district court, however, rejected all of the grounds for sanctions asserted in that motion. The court then imposed sanctions on three other grounds not included in the motion. The appellants did not receive notice of those three additional grounds, and had no opportunity to be heard in opposition to them before sanctions were imposed.

**[8]** A district court may impose sanctions sua sponte. *See In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986). Before doing so, however, the persons against whom the sanctions were imposed must have been given the same notice and opportunity to respond that are required for sanctions generally. *See Navellier v. Sletten*, 262 F.3d 923, 943 (9th Cir. 2001) ("When a court imposes sanctions *sua sponte*, the general rule is that it must first issue an order to show cause why sanctions should not be imposed to give the lawyer or party an opportunity to explain his or her conduct."). That did not occur in this case. The sanctions therefore cannot stand. Our reversal of the sanctions, however, does not preclude the district court from conducting further proceedings on the sanctions issue if it deems such action appropriate.

## CONCLUSION

In No. 05-56424, the judgment of the district court dismissing the complaint is affirmed. In No. 05-56743, the order of the district court awarding sanctions of $7,028 is reversed.

**AFFIRMED IN PART, REVERSED IN PART**