**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLISTON BASIN INTERSTATE
PIPELINE COMPANY,
               *Plaintiff-Appellant,*

          v.

AN EXCLUSIVE GAS STORAGE
LEASEHOLD AND EASEMENT IN THE
CLOVERLY SUBTERRANEAN
GEOLOGICAL FORMATION, INCLUDING
BUT NOT LIMITED TO THE FORMATION
BENEATH SECTION 35, T9S, R23E
CARBON COUNTY, MONTANA, AND
BENEATH SECTION 19, T58N, R99W
PARK COUNTY, WYOMING, AND
CERTAIN OIL OR GAS WELLS
LOCATED THEREIN; HOWELL
PETROLEUM CORPORATION;
ANADARKO PETROLEUM
CORPORATION,
               *Defendants-Appellees.*

No. 06-35660

D.C. No.
CV-06-00010-RFC

OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, District Judge, Presiding

Argued and Submitted
February 5, 2008—Seattle, Washington

Filed May 9, 2008

Before: Raymond C. Fisher, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

5153

Opinion by Judge Ikuta

## COUNSEL

Robert T. Hall, III (argued) and Andrea Wolfman, Thelen Reid Brown Raysman & Steiner LLP, Washington, D.C., for the plaintiff-appellant.

Jon Metropoulos and Dana L. Hupp, Gough, Shanahan, Johnson & Waterman, Helena, Montana, for the plaintiff-appellant.

W. Scott Mitchell and Jason S. Ritchie, Holland and Hart LLP, Billings, Montana, for the defendant-appellee.

Patrick R. Day (argued), Holland and Hart LLP, Cheyenne, Wyoming, for the defendant-appellee.

**OPINION**

IKUTA, Circuit Judge:

Williston Basin Interstate Pipeline Company (Williston) claims that it has lost and is continuing to lose natural gas stored in its Elk Basin Storage Reservoir due to the operation of gas production wells owned by Howell Petroleum Corporation and Anadarko Petroleum Corporation (Howell/ Anadarko). Two of those wells are located within the lateral boundaries of Williston's storage reservoir, but are completed in geologic formations (the Morrison and Sundance formations) below the geologic formation in which Williston stores its natural gas (the Cloverly formation). Williston brought an action in federal district court, seeking damages and injunctive relief pursuant to its state law claims of conversion and negligence and also seeking to condemn the two Howell/ Anadarko wells located within the lateral boundaries of the Elk Basin Storage Reservoir. The district court dismissed Williston's action. In this appeal, we consider Williston's arguments that the district court erred in dismissing Williston's complaint for lack of subject matter jurisdiction or for failure to state a claim under the Natural Gas Act (NGA), 15 U.S.C. §§ 717-717z. Williston contends that the district court erred in holding that Williston needed authorization from the Federal Energy Regulatory Commission (FERC) before it could condemn Howell/Anadarko's wells, and therefore erred in dismissing Williston's condemnation claim. Williston also contends that its state law claims raised a substantial federal question because they were aimed at enforcing a duty created by the NGA. We reject both of Williston's arguments and affirm the district court.

I

Williston is an interstate natural gas pipeline company that delivers gas to a variety of customers in Montana, North Dakota, South Dakota and Wyoming. As part of its opera-

tions, Williston stores gas in the Elk Basin Storage Reservoir within the Elk Basin Field, which is located in southern Montana and northern Wyoming. The Elk Basin Storage Reservoir is located in an underground geological formation (the Cloverly formation) from which the producible natural gas has already been removed. Williston now uses this formation for storage and withdrawal of its stored natural gas, and has installed seven active injection/withdrawal wells in the reservoir for this purpose.

As an interstate natural gas company, Williston is subject to federal regulation. *See* 15 U.S.C. § 717(a), (b). The NGA authorizes FERC to regulate the "transportation of natural gas" in interstate commerce. *See id.* § 717(a); 42 U.S.C. § 7172(a). Williston's gas storage facilities are regulated by FERC "since those facilities are a critical part of the transportation of natural gas and sale for resale in interstate commerce." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 308 (1988); *see also* 18 C.F.R. § 284.1(a) (providing that "[t]ransportation includes storage"). Under the NGA, a natural gas company must obtain a certificate of public convenience and necessity (CPCN) from FERC before it can engage in the acquisition, construction, operation or extension of any facility. 15 U.S.C. § 717f(c)(1)(A). Natural gas companies must operate their facilities in compliance with the terms and conditions set forth in their CPCN and in FERC regulations. *See id.* §§ 717(a), 717f(c)(1)(A), 717f(e).

The Elk Basin Storage Reservoir was previously owned by Billings Gas Company (Billings). In 1949, FERC issued Billings a CPCN to acquire and use the "Elk Basin Cloverly gas reservoir" for purposes of underground storage. *Billings Gas Co.*, 8 F.P.C. 1166, 1166-67 (1949). The CPCN stated that the reservoir was "more fully described in the application in these proceedings and exhibits appended thereto." *Id.* at 1167. Montana-Dakota Utilities Co. (Montana-Dakota) then acquired the reservoir and operated it until 1985, at which time FERC approved Williston's application for a CPCN to

acquire and operate natural gas facilities including the Elk Basin Storage Reservoir. The CPCN noted again that the facilities were "more fully described in the application." *Williston Basin Interstate Pipeline Co. & Montana-Dakota Utils. Co.*, 30 F.E.R.C. ¶ 61,143, 61,253 (1985).

Billings, Montana-Dakota, and Williston operated the Elk Basin Storage Reservoir until 2002 without any notable interference. During this period, Howell Petroleum Corporation owned leases and mineral interests in oil and gas producing formations in the Elk Basin Field. Problems began in 2002 when Anadarko Petroleum Corp., a corporation engaged in natural gas exploration and production, purchased all of Howell's stock. Soon after the stock purchase, Howell/Anadarko drilled several wells within the Elk Basin Field, including wells 19-1 and 195. Well 19-1 was completed in the Sundance formation and well 195 was completed in the Morrison and Sundance formations. Although the Morrison and Sundance formations are located below the Cloverly formation where Williston's natural gas is stored, both wells are located within the lateral boundaries of the Elk Basin Storage Reservoir and their well bores cross through the Cloverly formation to reach the lower geologic formations.

On January 27, 2006, Williston filed a complaint in district court against Howell/Anadarko, alleging that "[d]efendants have caused and are causing the loss . . . of Williston's storage gas." Williston claimed it conducted an analysis of Elk Basin Storage Reservoir data which indicated that the loss of gas in Williston's storage reservoir was directly correlated to increased production from Howell/Anadarko's wells. The complaint asserted state law conversion and negligence claims and sought damages and injunctive relief.

After Howell/Anadarko filed a motion to dismiss for lack of subject matter and diversity jurisdiction, Williston filed an amended complaint which added a claim for condemnation

under Rule 71A of the Federal Rules of Civil Procedure.[1] This amended complaint sought condemnation of wells 19-1 and 195 under the authority of Williston's 1985 CPCN. Williston did not allege that its CPCN specifically described the property Williston sought to condemn, nor did Williston provide the district court with a copy of the map exhibits which accompanied its CPCN application, or with any other application materials depicting the lateral and vertical boundaries of the reservoir approved by FERC in the 1949 or 1985 order. In the absence of any FERC authorization to condemn the two wells, Howell/Anardarko argued, among other things, that Williston's amended complaint failed to state a condemnation claim and that the court lacked subject matter jurisdiction over that claim. On July 14, 2006, the district court granted Howell/Anadarko's motion to dismiss Williston's federal claims and declined to exercise supplemental jurisdiction over the state law claims.

## II

We first review Williston's challenge to the district court's dismissal of Williston's condemnation claim. Because the district court's order discussed only jurisdictional grounds for dismissal, it apparently dismissed Williston's condemnation claim for lack of subject matter jurisdiction. However, the parties agree that the district court may have dismissed this claim for failure to state a claim. Because we can affirm the district court on any basis supported by the record, *see Foster v. Wilson*, 504 F.3d 1046, 1050 (9th Cir. 2007), we will consider both bases for dismissal.

---

[1]At the time Williston filed its amended complaint, Rule 71A of the Federal Rules of Civil Procedure governed the procedure for the condemnation of real and personal property in federal court. The rule was amended in 2007, and is now Rule 71.1 of the Federal Rules of Civil Procedure.

A

We first consider Williston's argument that the district court could not dismiss Williston's condemnation claim for lack of subject matter jurisdiction. As a general rule, when "[t]he question of jurisdiction and the merits of [the] action are intertwined," dismissal for lack of subject matter jurisdiction is improper. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Such an intertwining of jurisdiction and merits may occur when a party's right to recovery rests upon the interpretation of a federal statute that provides both the basis for the court's subject matter jurisdiction and the plaintiff's claim for relief. *See id.* (citing *Sun Valley Gas., Inc. v. Ernst Enters.*, 711 F.2d 138, 139 (9th Cir. 1983)). As the Court explained in *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998), "if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another,' " then the court has jurisdiction over the dispute, and cannot dismiss on jurisdictional grounds. *Id.* at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 685 (1946)). There is an exception to this general rule, however: "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682-83; *see also Steel Co.*, 523 U.S. at 89.

**[1]** Here the district court concluded that it lacked jurisdiction over Williston's condemnation claim based on the court's construction of two provisions of the NGA, 15 U.S.C. § 717f(h) and 15 U.S.C. § 717f(c)(1)(A), as read together.[2]

---

[2]15 U.S.C. § 717f(h) states, in pertinent part:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with

Section 717f(h) states that in order to bring a condemnation claim the natural gas company must have a CPCN and the acquisition must be "necessary." *See* § 717f(h) (permitting a condemnation action when a holder of a CPCN cannot acquire "the necessary right-of-way" required for its natural gas pipe lines, or "the necessary land or other property" required for pipeline operation facilities). Section 717f(c)(1)(A), in turn, precludes a natural gas company from acquiring or extending a facility without a CPCN from FERC "authorizing such acts or operations."

**[2]** According to the district court, in seeking to condemn wells 19-1 and 195, Williston was undertaking to extend its facilities. Pursuant to § 717f(c)(1)(A), a natural gas company may not extend its facilities without a CPCN authorizing the extension. Because FERC had not issued Williston a CPCN specifically authorizing an expansion of Williston's facilities to include wells 19-1 and 195, the district court concluded it

---

the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. § 717f(c)(1)(A) states, in pertinent part:

No natural-gas company or person which will be a natural-gas company upon completion of any proposed construction or extension shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, or undertake the construction or extension of any facilities therefor, or acquire or operate any such facilities or extensions thereof, unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations . . . .

lacked jurisdiction to entertain Williston's condemnation claim.

Williston does not contest the district court's determination that Williston would need a CPCN specifically authorizing an extension of its facilities before Williston could undertake any such extension. However, Williston argues that it is not bringing its condemnation claim for the purpose of extending its facilities pursuant to § 717f(c)(1)(A). Rather, Williston contends that it is bringing its condemnation claim for the purpose of operating and maintaining its existing facilities. In other words, Williston asserts that loss of natural gas from the reservoir impairs its operations, and Williston needs to condemn Howell/Anadarko's wells in order to prevent further losses. Because Williston is not attempting to extend its storage capacity or otherwise extend its operations, Williston claims that the acquisition of the Howell/Anadarko wells would not constitute an "extension of . . . facilities" that would trigger the restrictions imposed by § 717f(c)(1)(A). Therefore, Williston contends it does not need a CPCN authorizing its acquisition of these wells.

**[3]** Instead, Williston relies on § 717(h), which gives the holder of a CPCN the right to acquire a "right-of-way to . . . construct, *operate*, and *maintain* a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property . . . for the location of . . . stations or equipment necessary to the proper operation of such pipe line or pipe lines." § 717(h) (emphasis added). This language, Williston argues, supports Williston's position that its existing CPCN gives Williston the right to condemn property it needs for the operation and maintenance of its existing facilities without further authorization from FERC.

**[4]** Williston's argument required the district court to consider § 717f(c)(1)(A) and § 717f(h) and evaluate the merits of Williston's proposed interpretation of these statutes. Because Williston's right to proceed with its condemnation claim

would be "sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another," *Steel Co.*, 523 U.S. at 89 (internal quotation marks omitted), dismissal for want of subject matter jurisdiction is improper.

The *Bell* exception to this rule is inapplicable here. While the district court was correct to reject Williston's interpretation of § 717f(c)(1)(A) and § 717f(h), *see infra* at 5170, the interpretation itself has not been foreclosed by our precedent. *See Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974). Moreover, despite Howell/Anadarko's argument that Williston's condemnation claim is facially deficient under Rule 71A, we cannot say the claim is so immaterial, insubstantial, or frivolous on its face as to defeat federal jurisdiction. *See Bell*, 327 U.S. at 682-83; *see also* FED. R. CIV. P. 71A (2006) (current version at FED. R. CIV. P. 71.1 (2007)).

B

We nonetheless affirm the district court's dismissal of Williston's condemnation claim on the ground that Williston's complaint fails to state a claim upon which relief can be granted. *See Foster*, 504 F.3d at 1050; FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "[W]e may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. We accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007) (internal quotation marks and citation omitted).

Williston argues that it has stated a claim for relief under § 717f(h) by alleging that the property it seeks to condemn is necessary to the continued operation and maintenance of its existing facilities. Under Williston's interpretation of § 717f(h) and § 717f(c)(1)(A), *see supra* at 5163, Williston is not seeking to extend its facilities, and thus can proceed with its condemnation claim without further authorization from FERC. Based on this interpretation, Williston contends that it has sufficiently stated a claim for relief, and the district court erred in dismissing its condemnation claim. Williston does not dispute that it would lack authority to condemn Howell/Anadarko's wells, and thus would not be able to state a claim for relief, if acquisition of those wells constituted an extension of Williston's facilities. Therefore, our determination regarding whether dismissal was proper under Rule 12(b)(6) turns on our answer to the question whether Williston is seeking an "extension" of its facilities for purposes of § 717f(c)(1)(A).

**[5]** We start with the plain language of the statute. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56 (1987). Although the NGA does not define what constitutes the "extension of any facilities," *see* § 717f(c)(1)(A), the common usage of the word "extension" at the time the NGA was enacted would include an expansion of the physical boundaries of a facility by adding additional property.[3] *See* WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 900 (2d ed. 1937) (defining "extension" as "enlargement in dimension, area, duration, or

---

[3]The phrase "extension of any facilities" in § 717f(c)(1)(A) first appeared in § 7(c) of the Natural Gas Act of 1938, Pub. L. No. 75-688, 52 Stat. 821 (1938), which provided: "No natural-gas company shall undertake the construction or extension of any facilities for the transportation of natural gas . . . until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require such new construction or operation of any such facilities or extensions thereof . . . ." This section was amended in 1942 to its current form. *See* An Act to Amend Section 7 of the Natural Gas Act, Pub. L. No. 77-444, 56 Stat. 83, 83-84 (1942).

scope"). Williston has not pointed to any language in the NGA or implementing regulations supporting Williston's interpretation of the word "extension" as excluding the addition of property in cases where such property is useful for a natural gas company's operation or maintenance of its existing facilities.

**[6]** Rather, the structure of the NGA and its implementing regulations indicate that § 717(c)(1)(A) applies in every case where a natural gas company acquires additional property, even for operation and maintenance purposes. The NGA gives FERC "comprehensive authority" over the control of natural gas companies' facilities. *See Schneidewind*, 485 U.S. at 308. "[A] natural gas company must obtain from FERC a 'certificate of public convenience and necessity' before it . . . extends . . . any facility," because FERC must first be assured that the project will be carried out "in compliance with" FERC's rules and regulations, and that the project is "in accordance with the public interest." *Id.* at 302-03. Allowing a natural gas company to condemn property beyond the scope of its CPCN whenever that property could be useful for the operation or maintenance of an existing facility would create a significant gap in FERC's oversight of new projects and acquisitions, one of the principal goals of § 717f(c)(1)(a). *See id.* Moreover, it is inconsistent with a key Congressional goal in enacting the NGA, namely, to have FERC balance the competing public interests involved in a proposed project through the issuance of certificates of public convenience and necessity. *See* § 717f(e); *Schneidewind*, 485 U.S. at 300-04; *see also Consol. Edison Co. of N.Y., Inc. v. F.E.R.C.*, 315 F.3d 316, 319 (D.C. Cir. 2003) ("FERC may authorize or certificate any pipeline project that the agency determines is necessary or desirable in the public interest.") (internal quotation marks omitted).

**[7]** Moreover, Williston's proposed interpretation of the word "extension" in § 717f(c)(1)(A) as excluding acquisitions of property useful for operation or maintenance is contrary to

FERC's implementation of the NGA. FERC has consistently interpreted the NGA as requiring natural gas companies to obtain a CPCN before expanding a facility's physical boundaries to include additional property, even when the natural gas company is undertaking such expansion for the purpose of establishing a buffer zone to prevent gas migration from an existing storage reservoir. In implementing the Congressional scheme, FERC has promulgated regulations to ensure that landowners will be informed of any proposed infringement of their property rights, and will have an opportunity to contest such proposed infringements, prior to condemnation proceedings. Thus the applicant for a CPCN is required to submit a complete map of the proposed project, 18 C.F.R. § 157.14(a)(6), and provide notification to all affected landowners, *id.* § 157.6(d), including owners of property interests whose property "[i]s within the area of proposed new storage fields or proposed expansions of storage fields, including any applicable buffer zone." *Id.* § 157.6(d)(2)(iv). The CPCN applicant must inform the landowner of its rights "at the Commission and in proceedings under the eminent domain rules of the relevant state." *Id.* § 157.6(d)(3)(v). Landowners then have an opportunity to intervene and protest the proposed project. *See id.* § 157.10. Even when FERC provides a mechanism for giving qualifying natural gas companies advance approval to "acquire, construct, modify, replace, and operate facilities for the remediation and maintenance of an existing underground storage facility," *id.* § 157.213(a), (b), FERC does not allow such qualifying companies to expand their storage facilities' physical boundaries. Rather, natural gas companies may undertake the specified improvements without prior FERC authorization "provided the storage facility's certificated physical parameters—including . . . reservoir and buffer boundaries . . . remain unchanged." *Id.* These regulations, which provide multiple layers of protection for landowners, are inconsistent with Williston's proposed interpretation of the NGA as allowing a natural gas company

to condemn property for operation or maintenance purposes without having to obtain FERC approval.

*ANR Pipeline Co.*, 76 F.E.R.C. ¶ 61,263 (1996), further signals FERC's rejection of an interpretation of the NGA that would allow natural gas companies to expand their storage facilities' physical boundaries without FERC authorization. In *ANR Pipeline Co.*, FERC considered an application by ANR, a natural gas company that sought to condemn property it deemed necessary to prevent migration of stored gas beyond its existing storage field boundary. 76 F.E.R.C. at ¶ 62,346. ANR sought a "revised, larger boundary" for its storage field in order "to acquire, through eminent domain if necessary, the property rights it needs to protect the stored gas." *Id.* FERC described its role under § 7171f(c) as follows:

> Since ANR is an interstate natural gas pipeline engaged in the transportation of natural gas in interstate commerce, it is subject to the jurisdiction of the Commission and to section 7(C) [15 U.S.C. § 717f(c)] of the NGA. Where appropriate, the Commission has granted jurisdictional storage field operators amended certificate authority to revise their storage field boundaries in order to allow them to initiate condemnation procedures to seek storage easements that will allow for continued efficient operation of their certificated gas storage facilities.

*ANR Pipeline Co.*, 76 F.E.R.C. at ¶ 62,346. As indicated in *ANR Pipeline Co.*, FERC must authorize natural gas companies to seek condemnation of additional property needed for efficient operation, and will grant such authorization only where "appropriate" and "required by the public convenience and necessity." *Id.* There would be no need for a natural gas company to apply to FERC for an amended authorization if it were free to condemn property required for efficient operation or maintenance purposes without FERC approval. *See id.*; *see also Trunkline LNG Co.*, 51 F.E.R.C. ¶ 61,202 (1990)

(determining that the acquisition of property for "dispersion exclusion zones," constitutes an extension of the certificated facilities and requires pre-approval from FERC).

The Sixth Circuit reached a similar conclusion in the leading case of *Columbia Gas Transmission Corp. v. An Exclusive Gas Storage Easement*, 776 F.2d 125 (6th Cir. 1985). In that case, a natural gas company, Columbia, sought to condemn an easement for underground storage of natural gas in property that was one to two miles away from Columbia's storage field. *See id.* at 125-26. Columbia possessed a 1953 CPCN which did not cover the property it sought to condemn, but Columbia argued that it did not need an amended CPCN because the property it sought to condemn contained gas that had migrated from Columbia's gas storage reservoir and the easement was necessary to protect its certificated natural gas storage pool. *See id.* at 126.

The district court had disagreed. Noting that a natural gas company's certificated facilities were those described in the map attached to its application for a CPCN, *Columbia Gas Transmission Corp. v. An Exclusive Gas Storage Easement*, 578 F. Supp. 930, 934-35 (N.D. Ohio 1984); *see* 18 C.F.R. § 157.14(a)(6) (requiring the attachment of a detailed geographical map to an application for a CPCN), the district court held that a CPCN holder's power of eminent domain "extends only to the property located within the geographical area designated on the map or maps attached to the application for the certificate of public convenience and necessity" as required by the FERC regulations. 578 F. Supp. at 932. The Sixth Circuit affirmed the district court, ruling that § 717f(h) allowed Columbia to condemn the additional property, but only if it first "secure[d] a valid certificate of public convenience and necessity" encompassing that property. 776 F.2d at 128-29. *See also B&J Oil & Gas v. Fed. Energy Reg. Comm'n*, 353 F.3d 71, 73-74 (D.C. Cir. 2004) (noting FERC's authority to enlarge a storage field boundary when expansion is necessary to preserve the integrity of the storage field); *Tenn. Gas Pipe-*

*line Co. v. 104 Acres of Land*, 749 F. Supp. 427, 432 (D.R.I. 1990) (holding that a natural gas company was not entitled to expand the scope of an easement authorized by its CPCN without further authorization).

Williston's efforts to distinguish *Columbia Gas* are unavailing. Williston notes that Howell/Anadarko's wells are drilled through the Elk Basin Storage Reservoir and are within the lateral boundaries of Williston's storage facility, while in *Columbia Gas* the wells were drilled in areas beyond the lateral boundaries of the natural gas company's facility. However, § 717f(c) and 717f(h) make no distinction between extensions to property interests outside the lateral boundaries of a certificated facility and those outside the vertical boundaries of a certificated facility. Columbia, like Williston, was attempting to use a condemnation action to stop a third party from engaging in gas production operations that were allegedly capturing gas from Columbia's storage pool, and the Sixth Circuit held that the NGA required Columbia to first obtain an amended CPCN. The fact that Williston's condemnation action is aimed at stopping the production of gas in a lower geologic formation is not material. Williston is seeking to acquire property that belongs to another party, the acquisition of which has not been specifically authorized by FERC.

[8] Because Williston's strained interpretation of the word "extension" is inconsistent with the structure and logic of the NGA and with FERC regulations, we agree with the Sixth Circuit that a natural gas company may not condemn additional property that is not specifically described in its existing CPCN, even if the natural gas company seeks to acquire such property in order to operate and maintain an existing storage facility. In the typical case, the property covered by the existing CPCN will be specifically designated in the map exhibits attached to the application for the CPCN pursuant to 18 C.F.R. § 157.14(a)(6). Williston does not dispute that the facility described in Williston's application for a CPCN does not include Howell/Anadarko's leasehold interests in the two

wells completed in the Sundance and Morrison formations. Therefore, Williston's CPCN provided no basis for a condemnation order under § 717f(h). Accordingly, Williston's amended complaint failed to "state a claim to relief that is plausible on its face," *Twombly*, 127 S. Ct. at 1974, and the district court did not err in dismissing the complaint.

The district court also acted well within its discretion in declining to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *see also Foster*, 504 F.3d at 1051-52 (holding that the "decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion").

## III

We next turn to Williston's argument that the district court erred in holding that it lacked federal subject matter jurisdiction over Williston's state law claims. Williston argues that it does not need to rely on supplemental federal jurisdiction over its state law claims, because the state law claims themselves invoke federal subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 717u. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Section 717u provides, in relevant part:

> The District Courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder,

and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder.

**[9]** While § 717u does not expressly limit its jurisdictional grant to cases "arising under the Natural Gas Act," thereby paralleling the statutory language in § 1331, the Court has held that "[s]uch limitation is clearly implied." *See Pan Am. Petroleum Corp. v. Superior Court*, 366 U.S. 656, 665 n.2 (1961).

The Court has consistently interpreted jurisdictional statutes with an "arising under" qualification, like 28 U.S.C. § 1331 and 15 U.S.C. § 717u, as "giv[ing] the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that [1] federal law creates the cause of action or that [2] the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983). The second basis for jurisdiction arises when a federal court determines that "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

We first consider the argument that the district court had jurisdiction over Williston's state law claims under § 717u. Our cases have interpreted jurisdictional provisions substantially identical to § 717u, namely 15 U.S.C. § 78aa and 16 U.S.C. § 825p,[4] as giving federal courts jurisdiction over state

---

[4]15 U.S.C. § 78aa provides, in pertinent part:

The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction

law claims brought to enforce federal obligations. *See Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838-43 (9th Cir. 2004) (holding that 16 U.S.C. § 825p provided a basis for subject matter jurisdiction over a state common law claim predicated on a violation of a FERC tariff); *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers*, 159 F.3d 1209, 1211-12 (9th Cir. 1998) (holding that 15 U.S.C. § 78aa provided a basis for subject matter jurisdiction over a state common law claim predicated on a violation of federal securities law).

Williston argues that *Lockyer* and *Sparta* are controlling in this case and require us to hold that § 717u gave the district court jurisdiction over Williston's state law claims to enforce a duty created by the NGA. Williston characterizes its claims as follows: Williston has a duty to operate the Elk Basin Storage reservoir pursuant to its CPCN, and in accordance with the Natural Gas Act and FERC regulations. Williston's conversion and trespass claims, and its associated request for injunctive relief, are intended to prevent Howell/Anadarko from taking actions that interfere with Williston's compliance with these federal legal requirements. Because § 717u gives a district court jurisdiction over any action "to enforce any liability or duty created by" the NGA and associated rules and regulations, Williston contends that the district court had

of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

16 U.S.C. § 825p provides, in pertinent part:

The District Courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder.

jurisdiction to grant an injunction to prevent Howell/ Anadarko from taking actions that could threaten Williston's ability to perform its duties under the NGA.

[10] This argument is meritless. Unlike the state law claims at issue in *Lockyer* and *Sparta*, Williston's state law claims do not fall within the relevant exclusive jurisdiction provision. Section 717u does not provide federal jurisdiction for a state law claim against a party whose obligations or duties under the NGA are not at issue. *See* § 717u (giving a court jurisdiction "to enforce any liability or duty created by, or to enjoin any violation of, this chapter [NGA] or any rule, regulation, or order thereunder."). Williston has not identified any obligation imposed on Howell/Anadarko by the NGA. Indeed, Congress has excluded natural gas production and gathering operations, the very operations Howell/Anadarko is undertaking in the Elk Basin field, from the scope of the NGA. *See* 15 U.S.C. § 717(b) (the provisions of the NGA are not applicable to "the production or gathering of natural gas"); *see also Fed. Power Comm'n v. Panhandle E. Pipe Line Co.*, 337 U.S. 498, 509-13 (1949) (holding that § 717(b) precluded FERC from regulating an activity excluded from the NGA under that provision, even when the activity would negatively impact a natural gas company's ability to fulfill its duties and obligations under the NGA). By contrast, the plaintiffs in *Lockyer* and *Sparta* were attempting to enforce the defendants' obligations under federal law. *See Lockyer*, 375 F.3d at 841 (holding that federal jurisdiction existed under 16 U.S.C. § 825p when "[t]he state lawsuit turns, entirely, upon the defendant's compliance with a federal regulation"); *Sparta*, 159 F.3d at 1212 (holding that federal jurisdiction existed under 15 U.S.C. § 78aa where plaintiff's state law claims were founded on the propriety of defendants' federally regulated conduct). Because resolution of plaintiffs' state law claims in both *Lockyer* and *Sparta* required us to determine whether defendants had complied with rules that had the effect and force of federal law, we determined that we had jurisdiction under § 825p and § 78aa, respectively.

Williston argues that federal courts have jurisdiction to ensure compliance with the NGA in the face of third party threats, even when those threats are excluded from regulation under § 717(b) of the NGA. To support this theory, Williston cites *Columbia Gas Transmission Corp. v. Burke*, 768 F. Supp. 1167, 1170-71 (N.D. W. Va. 1990), in which a district court held it had subject matter jurisdiction over a natural gas company's state law trespass action based in part on the impact the trespass would have on the company's ability to comply with the NGA. We disagree with this conclusion to the extent the district court's assertion of federal jurisdiction was based on the natural gas company's own duty to comply with the NGA, rather than on enforcing the defendant's obligations under the NGA. The NGA does not authorize a federal court to enjoin non-regulated activities that interfere with a regulated company's operations. *See* 15 U.S.C. § 717u. Therefore, Williston's reliance on *Burke* is unavailing.

**[11]** Because Williston is not trying to enforce the defendants-appellees' obligations under the NGA, its claims do not fall within § 717u and do not invoke the federal courts' exclusive jurisdiction. Therefore, we reject Williston's argument that *Lockyer* and *Sparta* are controlling.

**[12]** Finally, we consider whether Williston has otherwise established that its state law claims arise under federal law. As noted in *Grable*, in order for a state law claim to provide a basis for federal jurisdiction, the state claim must "turn on substantial questions of federal law," and "really and substantially involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law." 545 U.S. at 312-313 (internal quotation marks omitted; alterations in original). In *Grable*, the Court determined it had federal jurisdiction over a state claim where "the meaning of the federal statute" was an essential element of a state quiet title action, "and the meaning of the federal statute [wa]s actually in dispute." *Id.* at 315. Here, we cannot say that a court would need to resolve a disputed provision of the NGA in order to resolve Willis-

ton's state law conversion or negligence claims, because no provision of the NGA constitutes an essential element of those claims. In sum, Williston has not identified a "substantial question[ ] of federal law" upon which its state law negligence and conversion claims would turn. *Id.* at 312. Therefore, the federal courts have no jurisdiction over such claims.

## IV

In conclusion, we affirm the district court's dismissal of Williston's condemnation claim on the ground that it failed to state a claim, and hold that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state law claims. We also affirm the district court's dismissal of Williston's state law claims for lack of subject matter jurisdiction.

**AFFIRMED.**