**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

AMANDA ARMSTRONG; HUI MIN
ZHAO; XIU ZHEN QI; MEI LIAN
CHEN; EDWARD LIEBERMAN; JOHN
DOES,

      *Plaintiffs-Appellants,*

v.

COMMONWEALTH OF THE NORTHERN
MARIANA ISLANDS; DEPARTMENT OF
FINANCE,

      *Defendants-Appellees.*

No. 07-16126

D.C. No.
CV-07-00002-ARM

OPINION

Appeal from the United States District Court
for the District of the Northern Mariana Islands
Alex R. Munson, District Judge, Presiding

Argued and Submitted
November 18, 2008—Honolulu, Hawaii

Filed August 7, 2009

Before: Mary M. Schroeder, Richard A. Paez, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Paez

10647

## COUNSEL

Alexis Ann Fallon, Fallon Law Offices, Saipan, MP, for the plaintiffs-appellants.

Gregory Baka, Deputy Attorney General, Office of the Attorney General, Saipan, MP, for the defendant-appellee.

## OPINION

PAEZ, Circuit Judge:

Amanda Armstrong and twenty-eight taxpayers (hereinafter referred to collectively as "Armstrong") appeal from the district court's order dismissing their action against the Commonwealth of the Northern Mariana Islands ("CNMI") seeking recovery of income tax rebates and accrued interest under the CNMI tax code. Armstrong also seeks declaratory and injunctive relief regarding the manner in which the CNMI government administers the payment of rebates. The district court concluded that it lacked subject matter jurisdiction over the claims, and dismissed the action pursuant to Federal Rule of Civil Procedure 12(b)(1).

Armstrong contends first that the district court had federal question jurisdiction over the claims under 28 U.S.C. § 1331 because the CNMI has adopted the Internal Revenue Code, 26 U.S.C. § 1 *et seq.* ("IRC"), as a local territorial income tax called the Northern Mariana Territorial Income Tax ("NMTIT"). Armstrong argues that because the provisions of the NMTIT "mirror" those of the IRC, claims that arise under the NMTIT raise a federal question and therefore "arise under" the laws of the United States for the purposes of § 1331.

Armstrong also argues that the district court had original jurisdiction over her claims pursuant to a provision in the *Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America* ("Covenant"), *reprinted in* 48 U.S.C. § 1801 (note),[1]

---

[1]In her reply brief, Armstrong also argued that because the tax rebate claims "arise out of and directly concern the scope and effect" of the Cov-

which provides that the United States tax laws shall be adopted by the CNMI as a local territorial income tax and shall be in force in the same manner as those laws are in force in Guam. Thus, argues Armstrong, just as the Guam district court has jurisdiction over tax-related matters that arise under the provisions of Guam's tax code, which also mirrors United States tax laws, the CNMI district court has jurisdiction over tax-related matters that arise under the provisions of the CNMI's tax code.

We have jurisdiction under 28 U.S.C. § 1291 and 48 U.S.C. § 1821(a). Because we agree with the district court's determination that it lacked subject matter jurisdiction over Armstrong's claims, we affirm.

I.

BACKGROUND

*A.   The CNMI Covenant and adoption of federal tax law as a local territorial tax system*

From 1947 until 1986, what is now the CNMI was a trust territory administered by the United States pursuant to an agreement with the Security Council of the United Nations. *See generally* Joseph E. Horey, *The Right of Self-Government in the Commonwealth of the Northern Mariana Islands*, 4 Asian-Pac. Law & Policy Journal 180, 181 (2003) (providing brief overview of CNMI history); *see also* 48 U.S.C. § 1801

---

enant, the district court had jurisdiction pursuant to Covenant § 903, *reprinted in* 48 U.S.C. § 1801 (note), which provides that "[n]othing herein shall prevent the presentation of cases or controversies arising under this Covenant to courts established by the Constitution or laws of the United States." At oral argument, however, Armstrong withdrew this additional argument. We therefore need not address either its merits or whether, as the CNMI contends, Armstrong waived the argument by not raising it in the district court or in her opening brief.

(quoting language of Pub. L. 94-241, describing trusteeship terms); *United States v. De Leon Guerrero*, 4 F.3d 749, 751 (9th Cir. 1993). In 1972, the Islands entered into formal negotiations with the United States to finalize and make permanent the relationship between the entities. *See id.*

On February 15, 1975, the negotiations culminated with the signing of the Covenant.[2] *See De Leon Guerrero*, 4 F.3d at 751; *see also* Horey, 4 Asian-Pac. Law & Policy Journal at 181-85 (describing history of Covenant and several Covenant provisions). This instrument, which governs the CNMI's political relationship with the United States, provides that the United States District Court for the Northern Mariana Islands ("NMI district court"), as a court established under Article IV of the United States Constitution, shall have the same jurisdiction as other United States District Courts. *See* Covenant § 402(a), *codified as amended at* 48 U.S.C. § 1822; *see also Nguyen v. United States*, 539 U.S. 69, 72-73 (2003) (describing how jurisdiction is vested in Article IV courts by acts of Congress).

The Covenant also contains provisions that govern the adoption of an income tax system for the CNMI. First, Covenant section 601 provides that "[t]he income tax laws in force in the United States will come into force in the Northern Mariana Islands as a local territorial income tax on the first day of January following the effective date of this Section, in the same manner as those laws are in force in Guam." To implement this provision, the CNMI legislature adopted the NMTIT, enacting the Northern Marianas Income Tax Act of 1982 and 1984, currently codified as amended in the Northern Mariana Islands Commonwealth Code ("CMC") at 4 CMC §§ 1701-17 (2004). *See* N. Mar. I. Pub. L. 3-11 (May 27,

---

[2]In 1986, with the Covenant fully in effect, the United States—by Presidential Proclamation—terminated the Trusteeship Agreement with respect to the CNMI. *See De Leon Guerrero*, 4 F.3d at 751.

1982), N. Mar. I. Pub. L. 4-24 (Dec. 11, 1984), N. Mar. I. Pub. L. 9-22, § 6 (Jan. 24, 1995).

Under the NMTIT, CNMI taxpayers

> are not required to pay federal income taxes to the United States Internal Revenue Service. However, over the course of a tax year, a CNMI taxpayer pays the exact same amount of tax to the CNMI government, through either payroll withholding deductions or quarterly payments, as a citizen of one of the several States with the same income would pay to the United States government.

*Olopai v. Guerrero*, No. 93-0002, 1993 WL 384960, at *1 (D. N. Mar. I. Sept. 24, 1993); *see* 4 CMC § 1802 (describing a General Fund "into which all revenues raised pursuant to the tax laws and other revenue laws . . . shall be deposited . . . .").

Section 601's provision that the CNMI shall adopt the United States tax laws as a local territorial income tax constitutes what is commonly referred to as a "mirror code" system. Congress has described such systems, which are implemented in several insular areas, including Guam, the Virgin Islands, and Puerto Rico, as "the provisions of law . . . which make the provisions of the income tax laws of the United States . . . in effect in a possession of the United States." 26 U.S.C. § 931 (note); *see* 48 U.S.C. § 1421i (Guam); 48 U.S.C. § 1397 (Virgin Islands); 48 U.S.C. § 734 (Puerto Rico).

In addition to Covenant section 601, Covenant section 602 authorizes the CNMI to enact additional local tax laws: "The Government of the Northern Mariana Islands may by local law impose such taxes, in addition to those imposed under section 601, as it deems appropriate and provide for the rebate of any taxes received by it . . . ." 48 U.S.C. § 1801 (note). Accordingly, several provisions of the NMTIT impose additional tax obligations on the CNMI and its taxpayers, and set

forth a procedure by which CNMI taxpayers may obtain significant rebates on taxes owed. *See* 4 CMC § 1708 (establishing rebate amounts); 4 CMC § 1711(b) (establishing rebate procedures); 4 CMC § 1713 (specifying that the interest on overpayments shall be calculated only on the amount not already rebated); 4 CMC § 1714 (discussing special rebate trust account); 4 CMC § 1810(b) (discussing authority to make refunds).

### B.   Armstrong's Claims

On January 19, 2007, Armstrong filed a complaint in the NMI district court.[3] She alleged, on behalf of herself and all others similarly situated, that the CNMI failed to calculate and pay statutory interest due on accrued rebate claims in violation of the NMTIT. Armstrong sought a judicial declaration that (1) interest applies to late-paid CNMI rebates; (2) the CNMI government is required to pay such interest; (3) CNMI taxpayers are entitled to offset their accrued rebates, plus interest, as a credit against taxes owed on wages; and (4) the CNMI government is estopped from asserting the applicable statute of limitations contained in 26 U.S.C. § 6511, due to the CNMI government's inaccurate representations that CNMI taxpayers were not entitled to interest on late-paid rebates.

Armstrong also sought injunctive relief enjoining the CNMI government from expending funds set aside in the Special Rebate Trust Account, as required by 4 CMC § 1714, so that the outstanding and accrued rebate claims could be satisfied. Last, Armstrong sought payment of accrued interest, in amounts to be proven at trial.

---

[3]Because the district court dismissed Armstrong's action under Federal Rule of Civil Procedure 12(b)(1) without making any factual findings, we take the allegations in the complaint as true. *Ojo v. Farmers Group, Inc.*, 565 F.3d 1175, 1183 (9th Cir. 2009) (quoting *Carson Harbor Village Ltd. v. City of Carson*, 353 F.3d 824, 826 (9th Cir. 2004)).

## C.   The District Court's Ruling

In response to Armstrong's complaint, the CNMI moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) on the ground that the district court lacked subject matter jurisdiction. The district court granted the CNMI's motion. Although the court recognized that the CNMI adopted the United States tax laws as required by the Covenant, it reasoned that those laws came into force as *local* territorial taxes, and that therefore no provision in the Covenant—and no other authority—authorized the court to exercise jurisdiction over claims seeking enforcement of these local laws. Armstrong timely appealed.

## II.

### ANALYSIS

Armstrong presents two arguments that the district court had subject matter jurisdiction over her claim.[4] We address, and reject, each in turn.

First, Armstrong contends that the claims invoke federal question jurisdiction under 28 U.S.C. § 1331. Because the rebate provisions of the NMTIT provide the legal basis for Armstrong's rebate claims, however, we conclude that the claims do not arise under federal law for the purposes of federal question jurisdiction.

Second, Armstrong argues that the court had original jurisdiction over the claims under Covenant section 601, which provides that the United States tax laws shall be in force in the CNMI in the same manner as they are in force in Guam.

---

[4]We review de novo the district court's decision to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1). *Stratman v. Leisnoi, Inc.*, 545 F.3d 1161, 1167 (9th Cir. 2008); *Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1225 (9th Cir. 2007).

Although in Guam, the district court has exclusive jurisdiction over tax-related claims, the instrument that governs Guam's relationship with the United States—and that confers exclusive jurisdiction over tax matters to the United States District Court for Guam—is entirely different from the Covenant that governs the CNMI's relationship with the United States. *See* 48 U.S.C. § 1421i. We see no reason to interpret section 601's reference to Guam to incorporate a jurisdictional provision that is (1) specific to the United States's relationship with Guam and (2) not contained in either the Covenant or the IRC.

## A. *Federal Question Jurisdiction*

Armstrong contends that because the provisions of the NMTIT "mirror" the provisions of the IRC, the claims she brought under the NMTIT necessarily implicate questions of federal law and are therefore subject to federal question jurisdiction under 28 U.S.C. § 1331. We disagree.

**[1]** Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." As noted above, section 402(a) of the Covenant affirms that the United States District Court for the Northern Mariana Islands shares the same jurisdiction as a district court of the United States. Thus, if Armstrong's claims "aris[e] under the Constitution, laws, or treaties of the United States," the NMI district court would have federal question jurisdiction and could address the merits of her claims.

"The Court has consistently interpreted jurisdictional statutes with an 'arising under' qualification," including § 1331, "as 'giv[ing] the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that [1] federal law creates the cause of action or that [2] the plaintiff's right to relief necessarily depends on resolution of a

substantial question of federal law.' " *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1100 (9th Cir. 2008) (quoting *Franchise Tax. Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)). Where, as here, plaintiffs invoke the second basis for jurisdiction—arguing not that federal law itself creates the cause of action, but instead that their right to relief necessarily depends on resolution of a substantial question of federal law —we must examine whether such question is a necessary element of one of their well-pleaded state (or, in this case, Commonwealth) claims. *See Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) (quoting *Franchise Tax. Bd.*, 463 U.S. at 13 (1983)). Because the NMTIT provisions mirror the IRC provisions, Armstrong argues that her claims "arise under" the IRC and therefore raise a disputed and substantial federal issue. *See Williston Basin*, 524 F.3d at 1100 (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

**[2]** Here, Armstrong's contention essentially amounts to an argument that because the IRC serves as the basis for the CNMI tax code, actions that arise under the NMTIT raise federal questions. Armstrong, however, presents us with no authority for her argument that under a mirror code system, it is federal law, not local law, that is in force, or that claims arising under such a system necessarily raise federal questions.[5]

---

[5]That the District Court of Guam has original, exclusive jurisdiction over tax-related matters arising under the Guam "mirror code," *see* 48 U.S.C. § 1421i(h)(1), does not further Armstrong's § 1331 jurisdictional argument, and the fact that at one time the District Court of the United States Virgin Islands had jurisdiction over certain tax-related matters arising under the Virgin Islands's "mirror code," *see* 33 V. I. Code Ann. tit. 33 § 1692; 48 U.S.C. § 1612, does not aid Armstrong either. *See Edwards v. Hovensa, LLC*, 497 F.3d 355 (3d Cir. 2007) (explaining that the Virgin Islands's legislature withdrew such jurisdiction when it transferred jurisdiction to its local superior court). In providing for district court jurisdiction over tax-related matters in Guam and the Virgin Islands, Congress

The Covenant's mandate that the CNMI adopt the provisions of the IRC as *local territorial* laws—which raise revenue for the CNMI government, *see Olopai*, 1993 WL 384960, at *1— disaffirms Armstrong's argument that Congress intended that all claims brought under the NMTIT would invoke federal question jurisdiction under § 1331. The language of the Covenant suggests that the opposite is true.[6]

**[3]** More importantly, as the district court pointed out, Armstrong's claims primarily involved the additional local provisions of the NMTIT, not the NMTIT provisions that were modeled after the IRC. In other words, Armstrong sought enforcement of local territorial income tax laws enacted pursuant to Covenant section 602. These local tax law claims do not possess, as necessary elements, "substantial, disputed" questions of federal law. *See Wander*, 304 F.3d at 858 (quoting *Franchise Tax. Bd.*, 463 U.S. at 13 (1983)).

**[4]** In sum, we conclude that because the NMTIT is a local,

---

enacted specific provisions tailored to the United States's relationship with these entities. Contrary to Armstrong's suggestion, these provisions are unrelated to the Covenant, which governs the relationship between the United States and *the CNMI*. Indeed, the unique jurisdictional provisions in the instruments governing the United States's relationship with other territories underscores the CNMI's argument that whether a federal district court has jurisdiction over tax-related matters does not *turn* on whether the territorial government adheres to a "mirror code."

[6]We do not foreclose the possibility that there might be some claim under the NMTIT of such a nature that its adjudication would involve a substantial question of federal law that might give rise to jurisdiction under § 1331. *See Wander*, 304 F.3d at 858-59 ("[C]ourts should approach the issue of federal question jurisdiction as one requiring sensitive judgments about congressional intent, judicial power, and the federal question. . . . Accordingly, when determining the propriety of federal question jurisdiction, courts look both to congressional intent and the nature of the federal interest at stake.") (internal quotation marks and citation omitted). *See also Grable & Sons*, 545 U.S. at 314; *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 810 (1986).

territorial income tax code, and because Armstrong's NMTIT claims seek to enforce the additional rebate provisions enacted pursuant to Covenant section 602, Armstrong's NMTIT claims were not subject to federal question jurisdiction under 28 U.S.C. § 1331.[7]

### B.    Original Jurisdiction under Covenant Section 601

Armstrong also argues that the district court had original jurisdiction over her action under Covenant section 601(a), which, as noted above, provides that the income tax laws in force in the United States will be enforced "*in the same manner as those laws are in force in Guam*" (emphasis added). Because tax-related disputes under Guam's income tax laws are subject to jurisdiction in the district court, Armstrong contends that the NMI district court has jurisdiction over disputes related to the NMTIT. Again, we disagree.

[5] First, the Guam district court has jurisdiction over tax-related matters pursuant to a provision of the Guam Organic Act; no such provision is contained in the IRC, the NMTIT, or the Covenant. Specifically, 48 U.S.C. § 1421i(h)(1) provides, in pertinent part, that "the District Court of Guam shall

---

[7]Armstrong briefly argues that section 1271 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, which authorizes insular areas such as Guam and the CNMI to "de-link" from the mirror code income tax system under certain conditions, further demonstrates the existence of federal jurisdiction. Although Armstrong's argument is not entirely clear, we construe it as support for her § 1331 jurisdictional argument. According to Armstrong, by providing for de-linkage in section 1971, Congress implicitly recognized that the federal income tax laws are in force in the CNMI as federal law, not local law. This argument, however, disregards the mandate of Covenant section 601 as explained both above and *infra* at 10660, and misinterprets Congress' authorization for insular areas such as the CNMI and Guam to adopt a simplified income tax code that is tailored to the unique circumstances of each area. Further, section 1271 does not address the NMI district court's jurisdiction over tax-related claims arising under the NMTIT. In light of the text and purpose of section 1271, it does not support Armstrong's § 1331 jurisdictional argument.

have *exclusive original jurisdiction over all judicial proceedings in Guam* . . . with respect to the Guam Territorial income tax." (emphasis added). *See Gov't of Guam v. Sup. Ct. of Guam*, 998 F.2d 754, 755 (9th Cir. 1993) (affirming that 48 U.S.C. § 1421i(h) requires that all matters "involving" the territorial income tax must be litigated in the district court).

[6] No similar provision exists in the Covenant; in fact, the Northern Marianas Tax Act of 1984, as amended, explicitly contemplates that the local superior court shall have jurisdiction over tax matters, stating that "[i]n applying the NMTIT for any purpose . . . the . . . provisions of the IRC shall be read so as to substitute 'Commonwealth of the Northern Mariana Islands' for 'United States' . . . and . . . 'Superior Court of the Northern Mariana Islands' for 'district court' . . . ." 4 CMC § 1701(e). The legislative history of Guam's Organic Act, moreover, reflects that section 1421i(h) was added in response to a unique problem Guam faced regarding uniform adjudication of refund claims pending in Guam's local court. *See* S. Rep. No. 85-2176 (1958), *as reprinted in* 1958 U.S.C.C.A.N. 3647, 3653-54.

Second, as discussed above, Covenant section 601, which directs the CNMI to adopt the federal tax laws, specifies that the applicable IRC provisions shall be enforced as *local* territorial laws. In contrast, 48 U.S.C. § 1421i provides that "[t]he income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam . . . ." Use of the word "local" highlights the distinction between the CNMI's mirror code tax system and Guam's.

[7] Last, the CNMI's enactment of the Northern Mariana Island Income Tax Act of 1982 and 1984, noted above, is best understood as reflecting the CNMI's intent to ensure that local tax disputes are adjudicated in the CNMI superior court. The Act's mandate that "superior court" shall be substituted for "district court" highlights the CNMI's intent to vest juris-

diction in the *superior court*, consistent with section 402 of the Covenant as amended. *See* 48 U.S.C. § 1822 ("The District Court for the Northern Mariana Islands shall have original jurisdiction in all causes in the Northern Mariana Islands[,] . . . jurisdiction over which is *not* vested by the Constitution or laws of the Northern Mariana Islands in a court or courts of the Northern Mariana Islands.") (emphasis added).

[8] In sum, we are unpersuaded by Armstrong's argument that the Covenant incorporates § 1421i(h)'s grant of exclusive jurisdiction over tax matters to the United States District Court for Guam. The legislative history of § 1421i(h), the text of the Covenant, and the enactment of the Northern Mariana's Income Tax Act all suggest otherwise. We therefore conclude that the district court lacked original jurisdiction over Armstrong's NMTIT claims and properly dismissed her action.

**AFFIRMED.**